WHITE, APPELLEE, *v.* MAYFIELD, ADMR., APPELLANT, ET AL.

[Cite as White *v.* Mayfield (1988), 37 Ohio St. 3d 11.]

(No. 87-326—Submitted November 17, 1987—Decided May 18, 1988.)

*Theodore A. Bowman,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Helen M. Ninos* and *Gerald H. Waterman,* for appellant.

SWEENEY, J. In the cause *sub judice* we are asked to interpret the pertinent language of R.C. 4123.85 as it

applies to the facts developed below. R.C. 4123.85, which establishes the time period for the filing of claims alleging a disability due to an occupational disease, provides as follows:

"In all cases of occupational disease, or death resulting from occupational disease, claims for compensation or benefits shall be forever barred unless, within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician or within two years after death occurs, application is made to the industrial commission or to the employer in the event such employer has elected to pay compensation or benefits directly."

The appellant-administrator asserts that the appellee's cause of action accrued at the time he was diagnosed as having an occupational hearing loss (*i.e.*, July 1978), and that since the instant claim was not filed until approximately five years after such diagnosis, the instant claim is time-barred under R.C. 4123.85. Appellant further argues that the lower courts erred by inserting, in essence, the word "total" before "disability" in the statute.

A review of R.C. Chapter 4123 reveals that the term "disability" is nowhere defined in any of the statutory provisions. However, as this court noted in *State, ex rel. Preston,* v. *Peabody Coal Co.* (1984), 12 Ohio St. 3d 72, 12 OBR 63, 465 N.E. 2d 433, both Black's Law Dictionary (5 Ed. 1979) and Webster's New Collegiate Dictionary (1975) define "disability" as the inability to work. Since, unlike other occupational diseases, the appellee here was clearly able to work in spite of his hearing loss, common sense dictates that his disability did not set into motion the R.C. 4123.85 statute of limitations on the date he was diagnosed as having a significant employment-related hearing loss.[1]

As appellee points out, the triggering event of R.C. 4123.85 is the *disability* brought on by the occupational disease, not the diagnosis of the disease itself. The "six months after diagnosis of the occupational disease by a licensed physician" language will typically come into play when a worker is already suffering a disability, but did not discover that it was employment-related until more than two years after the "disability due to the disease began." Under a clear reading of the statute, in all other situations the "six months after diagnosis" language will not be relevant except where it serves to extend the running of the two-year statute of limitations. By its very terms, the "six months after diagnosis" language can only lengthen, not shorten, the time for setting in motion the two-year statute of limitations. Therefore, given the peculiar facts of this case, we must reject appellant's argument that the date of diagnosis is the event which triggered the running of the statute of limitations set forth in R.C. 4123.85.

Similarly, we also reject appellant's argument that the courts below essentially added the word "total" before "disability" in interpreting R.C. 4123.85 as it applies to the facts in the instant case. Indisputably, under the workers' compensation system a "dis-

---

[1] While it may appear that the *Preston* case sets down the rule that a medical diagnosis of the occupational disease triggers the running of the statute of limitations set forth in R.C. 4123.85, it should be pointed out that the court's reference to the statute was merely *obiter dictum,* and was not determinative of the cause decided therein.

ability" may be total or partial, temporary or permanent, depending on the nature of the disease and how it affects the worker who suffers the disease. A review of R.C. Chapter 4123 reveals that certain occupational diseases are compensable only if total disability or death results. See, *e.g.*, R.C. 4123.68. Thus, one may suffer an occupational disease that gradually appears and worsens over time, but does not ripen into a compensable disability until sometime after the symptoms of the occupational disease are manifested. The hearing loss suffered by appellee in the instant case is but one example of an occupational disease that may not develop into a disabling disease until after the symptoms initially arise. Even if appellee had filed his claim within the time period urged by appellant, the hearing loss would probably not have been compensable since this court has held that a claim for benefits for a partial loss of hearing will not be allowed under the permanent partial disability provisions of R.C. 4123.57(B) or (C). *State, ex rel. Hammond,* v. *Indus. Comm.* (1980), 64 Ohio St. 2d 237, 18 O.O. 3d 438, 416 N.E. 2d 601, syllabus.

In any event, we do not believe that the interpretation of R.C. 4123.85 rendered by the courts below essentially adds words or meaning apart from that which appears on the face of the statute. Nevertheless, the fact remains that the term "disability" is not defined anywhere in R.C. Chapter 4123. Since a disability due to an occupational disease may manifest itself in varying degree and kind, we are persuaded that Resolution 21 of the Industrial Commission merits adoption by this court in order to establish a workable standard for determining when "disability due to the [occupational] disease began," under R.C. 4123.85. Resolution 21 of the In-

dustrial Commission, which was drawn up in 1945, and as revised, provides:

"It is hereby directed that since R.C. Section 4123.85 provides that an occupational disease application (other than silicosis) shall be barred unless made to the Bureau within two years after the disability began or within two years after death, and that said Section does not define the word 'disability,' the following should be used as an instruction guide in determining 'when disability due to the disease began':

"Disability due to an occupational disease shall be deemed to have begun as of the date on which the claimant first became aware through medical diagnosis that he was suffering from such disease or the date on which he first received medical treatment for such disease or the date claimant first quit work on account of such disease, whichever date is the latest."

The appellant contends that this court should resist adopting the foregoing Resolution 21 because it is in apparent conflict with R.C. 4123.85 and is not codified as a formal rule of the Industrial Commission in the Ohio Administrative Code. While appellant is correct in asserting that the Industrial Commission has not codified Resolution 21 in the Ohio Administrative Code, we do not believe that our adoption of it will conflict with R.C. 4123.85 in any respect. On the contrary, we are of the opinion that Resolution 21 complements the statute, especially in cases such as the instant one where definition of the "beginning" of the "disability due to the disease" is almost impossible to accurately define under the terms of the statute.

At this time, three of Ohio's courts of appeals have adopted Resolution 21 in assisting determination of the beginning of the "disability due to the disease" under R.C. 4123.85. The

Franklin County Court of Appeals adopted the Resolution 21 standard in the cause *sub judice*. The Butler County Court of Appeals also embraced this standard in *Grant* v. *Connor* (June 8, 1987), case No. CA86-12-177, unreported, appeal pending in 87-1353. In addition, the Court of Appeals for Lake County applied Resolution 21 in *Craddock* v. *Eagle Picher Indus., Inc.* (1982), 8 Ohio App. 3d 383, 8 OBR 498, 457 N.E. 2d 338.

While it may seem that precise rules applied in workers' compensation cases invariably fail to address new fact situations that were not envisioned at the time of their creation, we are of the opinion that the standard set forth in Resolution 21 is one that will supply firmness and predictability in this area of the law. Additionally, we believe that this standard sufficiently complements R.C. 4123.85 and will assist in removing much of the "gray area" in the statute that cases such as the one at bar present. Therefore, we hold that pursuant to R.C. 4123.85, disability due to an occupational disease shall be deemed to have begun on the date on which the claimant first became aware through medical diagnosis that he or she was suffering from such disease, or the date on which claimant first received medical treatment for such disease, or the date claimant first quit work on account of such disease, whichever date is latest.

As pointed out above, since the term "disability" is nowhere defined in R.C. Chapter 4123, we find that adoption of the foregoing standard governing the date the "disability due to the disease began" is the most logical and reasoned course to follow. Equally compelling, in our view, is the fact that provisions such as R.C. 4123.85 must be "* * * liberally construed in favor of employees * * *." R.C. 4123.95. Given the legislative directive to liberally construe the workers' compensation statutes in favor of the employee, we believe our endorsement of the Industrial Commission's Resolution 21 is more consonant with furthering the remedial and humanitarian purposes of the workers' compensation system.

Based on the foregoing, we find that the appellee became disabled due to the occupational disease on June 29, 1982. Therefore, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., LOCHER, DOUGLAS and H. BROWN, JJ., concur.

HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. The alleged disability and the time when the claimant last worked are completely unrelated. The term "disability" by the majority's own enunciated standard herein is an inability to work, *i.e.*, an incapacitating illness. No such "disability" was at all present here and therefore the court should have referred to the date of the diagnosis. The reason that the claimant ceased employment was not because of a disease, but because his employer went out of business. Giving the statute a reasonable interpretation, it would seem to be clear that the disability contemplated is a degree of disablement from working which must be "due to the disease." The alternative time set forth in the statute which is applicable when the two years pass is to allow six months from the date such disease is diagnosed. This claimant waited five years, and is therefore time-barred. The intended application of the six-month period is to lengthen the two-year period to a future diagnosis after such two-year period has elapsed. In that this claimant failed to make a

timely claim after the diagnosis of his disease, the statute precluded his claim.

The claimant argues that the statute did not run until he was forced to stop working because of the disease. Thus, it is asserted that claimant may file his claim at any time after his disease is diagnosed, and that the statute's purpose was only to lengthen the period, not to shorten it. This, of course, is the corollary to the true meaning of the statute that if a disease does not cause one to lose work, it is not compensable. As stated, the claimant seeks to have the two-year period begin, not when he stopped working because of the disease, but when the factory closed, a completely unrelated event. This is not the meaning, or the intent, of this statute.

Therefore, I respectfully dissent.

WRIGHT, J., concurs in the foregoing dissenting opinion.