**ZIEMKIEWICZ, Appellant,**

v.

**UNIVERSAL URETHANE PRODUCTS, INC. et al., Appellees.**

[Cite as *Ziemkiewicz v. Universal Urethane Prod., Inc.* (1994), 96 Ohio App.3d 494.]

Court of Appeals of Ohio,
Lucas County.

No. L–93–344.

Decided Aug. 26, 1994.

*John J. Siciliano* and *Warren D. Wolfe,* for appellee Universal Urethane Products, Inc.

*Lee Fisher,* Attorney General, and *Paula Hicks–Hudson,* Assistant Attorney General, for appellee Administrator, Bureau of Workers' Compensation.

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted summary judgment to defendants-appellees, Universal Urethane Products, Inc. and the Administrator of the Bureau of Workers' Compensation, and dismissed plaintiff-appellant John Ziemkiewicz's complaint on appeal from the denial of his application for benefits for an occupational disease.

Appellant has appealed, setting forth the following assignment of error:

"The trial court erred to the prejudice of the Plaintiff–Appellant, John Ziemkiewicz, in granting Defendant's Motions for Summary Judgment on statute of limitations grounds as there exists a genuine issue of material fact regarding the timeliness of Plaintiff's Complaint."

The undisputed facts that are relevant to our determination of the issues raised by this appeal are as follows. In January or February 1985, appellant started working for appellee Universal. While he began his employment sweeping floors, he was ultimately moved to the lathe department, where for approximately four

years he worked as a lathe operator. Beginning in early to mid–1985, appellant began experiencing periods of shortness of breath, wheezing, and other asthma like symptoms. He made several visits to his doctors, who described his condition as asthmatic bronchitis and/or an allergic reaction to chemicals. They tested him for allergies, treated him with cold and bronchitis medication, and prescribed breathing treatments. During that period, he missed several days of work due to these problems. In May 1987, appellant's doctor, Dr. Widner, diagnosed him as having bronchial asthma and indicated that it was "highly likely as to causal relationship between exposure to isocynates at work." At that time, appellant took approximately seven or eight days off work because of his condition. Also in May 1987, appellant began seeing Dr. Kahn, who diagnosed his condition as "bronchial asthma which is partially resistant to therapy and exacerbated by isocynate at work." Dr. Kahn prescribed continued treatment with medication, including steroids, and advised appellant to use a mask for protection when he was working. The record indicates that periodically through-out 1988, 1989 and 1990, appellant contacted Dr. Kahn as to problems with his asthma and or his treatments. In October 1990, appellant was having trouble breathing at work and left early to pick up some prescription medication. While at the drug store, he suffered a respiratory arrest and was taken to the hospital. During his hospitalization, he was advised by Dr. Kahn that there was a strong possibility that his condition was being exacerbated by exposure to substances at work and that he should be moved to a position where he would no longer have contact with those substances, or he would have to quit.

On November 8, 1990, appellant filed an application for workers' compensation benefits in which he alleged that he had contracted the occupational disease bronchial asthma in the course of and arising out of his employment with appellee Universal. On March 28, 1991, the district hearing officer allowed his claim for bronchial asthma. Appellee Universal appealed and on July 15, 1992, the Toledo Regional Board of Review found that appellant's application for benefits had not been timely filed and reversed the hearing officer's allowance of the claim. Appellant appealed that decision to the Industrial Commission of Ohio and, on September 8, 1992, the commission affirmed the board of review's decision. On September 22, 1992, appellant filed his notice of appeal in the Lucas County Court of Common Pleas and on October 2, 1992 he filed his complaint, in which he requested that he be granted the right to participate in the Workers' Compensation Fund. Thereafter both appellees filed motions for summary judgment in which they argued that the evidence indicated that appellant had been first diagnosed as having bronchial asthma as early as 1985 and that the two-year statute of limitations set forth in R.C. 4123.85 was triggered no later than June 1987 when he was informed that his condition was caused by exposure to substances at work and, therefore, the application for benefits filed on November

8, 1990 was beyond the two-year limitations period set forth in R.C. 4123.85. In response, appellant maintained that the statute of limitations was not triggered until he quit his job in October 1990 because of the disability brought on by the occupational disease; prior to that time, although he had been diagnosed as having the disease, he had not been disabled by it.

On November 17, 1993, the trial court filed its judgment entry in which it granted summary judgment in favor of both appellees and dismissed appellant's complaint. It is from that decision that appellant appeals.

In support of his assignment of error, appellant argues that, pursuant to applicable Ohio case law, the two-year statute of limitations set forth in R.C. 4123.85 was not triggered until the last day of his employment with appellee Universal in October 1990. Appellant submits that the fact that he missed eight days of work in 1987 did not trigger the running of the statute of limitations, since he did return to his employment. Appellant submits further that the prior "diagnosis" did not trigger the statute of limitations, since the triggering event is not the diagnosis of the disease but rather the disability brought on by the disease.

Appellee Universal argues in response that under workers' compensation law appellant was temporarily and totally disabled in 1987 when his doctors diagnosed his condition and told him that it was a result of his work and, therefore, the statute of limitations began to run no later than that date. Appellee administrator also argues that the statute of limitations began to run in May 1987 when appellant was aware he was suffering from an occupational disease and when he first *quit work* for seven or eight days because of that condition.

R.C. 4123.85 (effective date Nov. 3, 1989) provides:

"In all cases of occupational disease, or death resulting from occupational disease, claims for compensation or benefits shall be forever barred unless, within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician or within two years after death occurs, application is made to the industrial commission or the bureau of workers' compensation or to the employer in the event the employer has elected to pay compensation or benefits directly."

The issue raised by the parties' motions for summary judgment and on appeal to this court is: When did the two-year statute of limitations set forth in R.C. 4123.85 begin to run or, stated otherwise, when did appellant's disability due to the occupational disease begin?

In *White v. Mayfield* (1988), 37 Ohio St.3d 11, 523 N.E.2d 497, the Supreme Court of Ohio, in construing the provisions of R.C. 4123.85, recognized that one

could suffer from an occupational disease that "gradually appears and worsens over time, but does not ripen into a compensable disease until some time after the symptoms of that condition are manifested." The court, finding that a disability from an occupational disease could manifest itself in varying degrees and kind, adopted Resolution 21 of the Industrial Commission of Ohio to establish a workable standard for determining when a "disability due to the occupational disease began," holding at the syllabus:

"Pursuant to R.C. 4123.85, disability due to an occupational disease shall be deemed to have begun on the date on which the claimant first became aware through medical diagnosis that he or she was suffering from such disease, or the date on which claimant first received medical treatment for such disease, or the date claimant first quit work on account of such disease, whichever date is the latest."

Other appellate courts since *White* have addressed issues similar to the one presented herein. In determining when the statute of limitations set forth in R.C. 4123.85 is triggered in cases such as this, these courts have construed the phrase "quit work" as used in *White* as the point at which a claimant permanently terminated employment, as opposed to when a claimant took time off for treatment with a subsequent return to the employment. These courts held that where an occupational disease is diagnosed but there is only a gradual appearance of the disability and the employee continues to work and does not file a claim until finally quitting work, the two-year statute of limitations does not begin to run until the employment was permanently terminated, despite the earlier diagnosis. See *Bitticker v. Mayfield* (June 23, 1988), Tuscarawas App. No. 88AP010004, unreported, 1988 WL 70513; *Campbell v. Mayfield* (Sept. 30, 1992), Portage App No. 91–P–2337, unreported, 1992 WL 267358; *Makris v. Ormet Corp.* (Aug. 26, 1988), Monroe App. No. 637, unreported, 1988 WL 91306. The *Bitticker* court reasoned that to hold otherwise would only serve to penalize an employee for attempting to continue working in spite of the illness.

In *Norwalk Concrete, Inc. v. Resor* (Apr. 7, 1989), Huron App. No. H–88–16, unreported, 1989 WL 32575, this court considered a similar situation where in March 1982 an employee was diagnosed with a work-related condition and was advised by his doctor to stay home for several days because of that condition. The employee stayed home for two days and then returned to work, but quit entirely at a later date and filed his claim for benefits more than two years after the March 1982 diagnosis. We held that two days off did not constitute quitting work under *White, supra,* and, therefore, his disability had not begun in March 1982 and his subsequent claim was timely filed.

Here, the record indicates that while appellant may have been made aware that his condition was related to his employment as early as 1987, his disability

occurred gradually and, although there were times where he missed several days of work due to his condition, he did not permanently terminate or quit his work until October 1990 and, therefore, the third prong of the standard set forth in *White* is clearly applicable, since that event occurred last.

Upon consideration of the foregoing this court finds, as a matter of law, that the two-year statute of limitations set forth in R.C. 4123.85 did not begin to run until October 1990 and appellant's sole assignment of error is found well taken.

On consideration whereof this court finds that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded to that court for further proceedings not inconsistent with this opinion. Appellees are ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK and SHERCK, JJ., concur.