**DesMARAIS, Appellant,**

v.

**STRAUSS & TROY, Appellee; Industrial Commission of Ohio et al.**

[Cite as *DesMarais v. Strauss & Troy* (1997), 121 Ohio App.3d 125.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960539.

Decided July 2, 1997.

*Kondritzer, Gold, Frank & Crowley Co., L.P.A.,* and *Lane N. Cohen,* for appellant.

*Strauss & Troy* and *Steven F. Stuhlbarg,* for appellee.

HILDEBRANDT, Presiding Judge.

*INTRODUCTION*

Plaintiff-appellant Jeanne M. DesMarais ("appellant") appeals from the judgment entered by the trial court vacating the Industrial Commission's orders awarding workers' compensation benefits for appellant. Following a bench trial, the trial court held that the statute of limitations had expired before appellant filed her claim. For the reasons that follow, we reverse the judgment of the trial court and remand the cause for further proceedings in accordance with this opinion.

*SUMMARY OF FACTS*

The facts of the case recited herein are taken from the trial court's decision and entry and its findings of fact and conclusions of law. The trial court substantially adopted the findings and conclusions submitted on behalf of defendant-appellee Strauss & Troy ("appellee"). Appellant began working for appellee in 1986 as a word processor. Throughout her employment, appellant's skills were excellent. She was fast and accurate in her work during her tenure with appellee.

In April 1990, appellant first began complaining to her physician of certain painful sensations in her wrists and arms. She was treated for the symptoms; however, treatment did not alleviate the pain. In 1991, appellant's physician informed her that the pain in her arms and wrists was caused by the repetitive work that she performed for appellee. She was ultimately diagnosed as having bilateral cumulative trauma syndrome.

Appellee was aware of appellant's condition and that appellant's physician had indicated that the condition was work-related. Appellant wore arm and wrist braces beginning in 1991 and continuing throughout her employment. Appellee also provided appellant with an ergonomic chair and a wrist rest for appellant's keyboard to enable appellant to perform her job.

Appellant never missed work on account of her condition; she continued to work in her word-processing position up until the day that she was terminated due to firm-wide downsizing in 1994. Appellant did not quit her job with appellee because of her occupational disease.

Within one or two days of her termination, appellant filed a claim for workers' compensation benefits for disability due to an occupational disease. The Industrial Commission allowed the claim, and appellee, after exhausting administrative appeals, appealed to the court of common pleas. Following a bench trial, the trial court reversed the decision of the commission allowing the claim on the ground that the statute of limitations for filing a claim based on appellant's condition

began to run in 1991 and expired in 1993. The court held that appellant was disabled due to an occupational disease attributable to her employment but that appellant's application for benefits, filed in 1994, was untimely.

DISCUSSION

■ Appellant's sole assignment of error asserts that the trial court erred in holding that the statute of limitations had expired on appellant's claim. The relevant statute relating to the limitations for occupational diseases states:

"In all cases of occupational disease, or death resulting from occupational disease, claims for compensation or benefits are forever barred unless, within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician or within two years after death occurs, application is made to the industrial commission or the bureau of workers' compensation or to the employer if [self-insured]." R.C. 4123.85.

According to the statute, appellant had to file an application for benefits within two years of the time that her "disability due to the disease began."

■ Occupational-disease claims are treated differently from discrete injuries arising out of employment for purposes of R.C. Chapter 4123. An employee who contracts an occupational disease due to his or her employment is not entitled to receive workers' compensation benefits simply on account of having incurred the disease, but only if he or she is totally "disabled" by the disease. See R.C. 4123.68; White v. Mayfield (1988), 37 Ohio St.3d 11, 13, 523 N.E.2d 497, 500.

■ Whereas a compensable injury is ordinarily the result of a single, specific accident which causes immediate and traumatic physical harm, "one may suffer an occupational disease that gradually appears and worsens over time, but does not ripen into a compensable disability until some time after the symptoms of the occupational disease are manifested." See id. The disease does not become compensable until it causes the employee to lose work. Id.

Thus, the determination must be made as to when appellant became "disabled" due to her disease in order to determine when the two-year statute of limitations began to run.

In White, supra, the Ohio Supreme Court considered this precise question. The court held that "the triggering event of R.C. 4123.85 is the disability brought on by the occupational disease, not the diagnosis of the disease itself." (Emphasis sic.) Id., 37 Ohio St.3d at 12, 523 N.E.2d at 499. However, the term "disability" is not defined anywhere in R.C. Chapter 4123. The court therefore looked to a resolution of the Industrial Commission for assistance, and adopted that resolution for purposes of determining when a disability begins:

"Disability due to an occupational disease shall be deemed to have begun [1] as of the date on which the claimant first became aware through medical diagnosis that he was suffering from such disease or [2] the date on which he first received medical treatment for such disease or [3] the date claimant first quit work on account of such disease, *whichever date is the latest.*" (Emphasis added.) *Id.* at syllabus.

The order in which the three events occur varies depending on the particular case. Sometimes, an employee might be unaware that the disability that causes him to quit employment was caused by a condition at his employment. In other circumstances, treatment for a work-related disease might not be available until after the employee becomes totally disabled. The limitations period would then begin to run when the latest of the three elements occurred.

In this case, appellant was diagnosed and treated for a work-related occupational disease in 1991, so two of the three events for triggering the statute of limitations occurred more than two years prior to the time that appellant left employment with appellee. Appellee contends, and the trial court expressly found in its Decision and Entry, that the third prong of the test was "inapplicable" because appellant was laid off and did not quit her job with appellee due to her disability.

██ We find that appellant's assignment of error is well taken and that the holding of the trial court that the third element was inapplicable to her claim was erroneous. As stated before, an occupational disease is not compensable until it renders the employee unable to work. All three of the elements identified by the Ohio Supreme Court in *White* must occur for an employee to obtain benefits for the disability: the employee must be disabled by the disease (unable to work on account of the disease), must know she has the disease, and must know that the disease was caused by her employment. The element that requires an employee to quit work on account of his or her disease (and thereby become "disabled" under the *White* analysis) *must* occur for the claimant to be considered disabled, and if this element happens last, the statute begins to run at that time. If it has not yet occurred, the statute has not begun to run.

The interpretation propounded by the appellee would mean that an employee diagnosed with an occupational disease that does not cause total disability within two years could be fired from employment two years and one day after the diagnosis and be barred from bringing a claim for compensation, since the third element would then be "inapplicable."

This result would ensue even if the employee later became totally disabled from working *anywhere* because of a disease caused by the work she performed for her prior employer. Such a result is contrary to the purpose of the workers'

compensation statutes, which is to provide compensation for employees injured or disabled because of their employment. Appellee's argument is also contrary to *White,* in which the court plainly stated that the triggering event for the statute of limitations for an occupational disease case is *not* the diagnosis of the disease but the *disability* caused by the disease. See *White, supra; Lainhart v. S. Ohio Fabricators, Inc.* (1990), 61 Ohio App.3d 432, 436, 572 N.E.2d 846, 848; *Grant v. Connor* (1988), 38 Ohio St.3d 75, 77–78, 525 N.E.2d 1383, 1383–1384 (claimant was not prevented from working due to disease at the time of diagnosis; statute did not start to run).

Thus, the fact that appellant did not quit her job with appellee because of her occupational disease is irrelevant to the issue of whether appellant has had to stop working on account of her disability and, consequently, whether the third triggering event has occurred. In *White, supra,* the claimant was exposed to loud noises during the twenty-nine years he worked for the company. He was diagnosed with a severe hearing loss related to his job in 1978, but he continued working for the company until 1982, when he, like appellant here, was laid off. The court expressly rejected the argument that the statute of limitations began to run on White's occupational-disease claim in 1978, when he was diagnosed with the hearing loss. Additionally, the fact that White, like appellant herein, lost his job due to a layoff and not because he could no longer work due to his hearing loss was immaterial to the issue of when the statute began to run. *White, supra,* 37 Ohio St.3d at 12–13, 523 N.E.2d at 499–500.

The requirement that the claimant "quit work" on account of his or her disease means that the claimant is no longer able to work because of the disease; it does not mean that the claimant must quit the exact employment that caused the disease. See *White, supra; Grant, supra.* In *Grant,* the claimant had contracted an occupational disease while working at a foundry, but the disease was not so advanced that the claimant was unable to work. The foundry closed in 1959. The claimant then worked for a department store from 1959 until 1978, when his industrial disease had progressed to the point that he could no longer work at all.

The Ohio Supreme Court held that the statute of limitations on the occupational-disease claim did not begin to run until 1978, when the claimant had to quit work on account of his disease. *Grant, supra,* 38 Ohio St.3d at 77–78, 525 N.E.2d at 1385. The fact that he was laid off from the foundry years before his disease disabled him from working did not preclude a finding that the claimant had "quit work" on account of his disease.

■ Appellee also claims that the trial court's decision can be upheld because the court determined in the alternative that appellant's claim was barred by the six-month limitation set forth in R.C. 4123.85. That provision states that a claim for an occupational disease must be filed within two years of the disability "or

within such *longer* period as does not exceed six months after diagnosis of the occupational disease." (Emphasis added.) R.C. 4123.85. As the plain language of the statute states, the six-month provision can only *extend* the time in which a claimant has to file; it cannot *reduce* it. *White, supra,* 37 Ohio St.3d at 12, 523 N.E.2d at 499; *Grant, supra,* 38 Ohio St.3d at 77, 525 N.E.2d at 1385; *Lainhart, supra,* 61 Ohio App.3d at 436, 572 N.E.2d at 848.

*CONCLUSION*

The only portion of the trial court's decision that was appealed was the holding that appellant's claim was time-barred. The remaining determinations of the court (that appellant was totally disabled due to an occupational disease attributable to her work with appellee) were not appealed and will not be disturbed. Therefore, since we find appellant's assignment of error meritorious, we reverse the trial court's judgment vacating the decisions of the Industrial Commission. We remand the cause to the trial court for an entry affirming the decisions of the Industrial Commission and for further proceedings consistent with this decision.

*Judgment accordingly.*

GORMAN and SUNDERMANN, JJ., concur.