OPINION
Defendant-appellant New Bakery of Ohio, Inc. (hereinafter "New Bakery") appeals the January 28, 1999 Judgment Entry of the Muskingum County Court of Common Pleas which granted summary judgment in favor of plaintiff-appellee, Mark D. Roberts.
 STATEMENT OF THE CASE AND FACTS
Appellee worked for New Bakery five to six days a week, eight hours per day, from 1980 through 1997. During these years, appellee was exposed to substantial quantities of flour dust and other airborne substances which ultimately caused appellant to contract an allergic asthmatic bronchitis known as "baker's asthma." When appellee first experienced symptoms of this condition in 1983, he sought medical treatment from Dr. Joseph Eichel. Dr. Eichel never formally diagnosed appellee with an occupationally related condition. However, between 1983 and 1996, appellee missed a number of days of work because of his recurring breathing problems. During these absences, appellee received group disability benefits based on medical certifications from Dr. Eichel. New Bakery permitted appellee to move from the production floor to the shipping area to see if the changed environment would relieve his breathing problems. Unfortunately, appellee continued to experience recurrent asthma attacks, even in the shipping area. Appellee concluded he must have had an underlying lung disease and he would suffer no matter where he worked. (Affidavit of Appellee at p. 3). Because he could make more money, and his breathing problems had not resolved, appellee transferred back to his regular position on the bakery production floor. In 1987, Dr. Eichel referred appellee to Dr. Picken, a specialist at Riverside Hospital in Columbus, Ohio. After a series of diagnostic tests, Dr. Picken determined appellee was allergic to a number of substances, including ragweed pollen, grass pollen, tree pollen, house dust, corn, peanuts, and wheat. On April 10, 1987, Dr. Picken wrote a letter to Dr. Eichel in which Dr. Picken diagnosed appellee with allergic asthma. The letter, which notes a carbon copy was sent to appellee, states in pertinent part: * * * [appellee's] allergies extend to the air-born materials in his workplace and make it essential that he be removed from that work place and its exposure. I do not think that a facemask would be adequate. His symptoms could be suppressed by continuos steroid exhibition, but this would be at serious risk to his health. I want to emphasize that his situation in no way reflects upon his employer or upon plant safety measures. It represents the same stroke of bad luck which occurs when a veterinarian becomes allergic to animal dander.
* * * I have suggested that he approach the plant management or, through them, the corporate offices and personnel department here in Columbus, to negotiate a possible transfer or rehiring to another division of the company.
In his response to request for admission number eight, appellee admitted he received a copy of the correspondence from Dr. Picken to Dr. Eichel. However, in his affidavit, appellee maintains he does not recall ever receiving the letter or being aware of its contents until it was presented at the Industrial Commission hearing in 1997. Appellee changed physicians from Dr. Eichel to Dr. Perry Kalis. On May 7, 1996, while under the care of Dr. Kalis, appellee experienced a severe asthmatic attack which required hospitalization. While appellee was hospitalized, Dr. Kalis examined appellee, reviewed his entire medical history, and formally diagnosed appellee with an occupationally related asthmatic condition. Dr. Kalis explained it was the exposure to allergens at work which caused appellee's recurrent asthmatic condition. Dr. Kalis specifically told appellee he could not return to his position of employment on the bakery production floor without seriously endangering his health. Based upon that information, appellee quit his job. Appellee is now employed in a different line of work. On September 27, 1996, appellee filed an application for workers' compensation benefits. Dr. G.E. Muchler, a pulmonary specialist acting for appellant examined appellee. Dr. Muchler concurred with Dr. Kalis' diagnosis and agreed appellee's condition was work-related. After a July 3, 1997 hearing, the District Hearing Officer of the Industrial Commission denied appellee's claim as barred by the two year statute of limitations contained in R.C. 4123.85. This order was affirmed by a staff hearing officer on August 25, 1997. An appeal to the Industrial Commission was refused by Order dated September 3, 1997. On September 24, 1997, appellee filed a Petition and Complaint in the Muskingum County Court of Common Pleas. The parties filed cross motions for summary judgment. In a January 28, 1999 Judgment Entry and Decision, the trial court granted appellee's Motion for Summary Judgment and denied appellant's Motion for Summary Judgment. It is from this Judgment Entry appellant prosecutes this appeal, assigning error:
 I. THE DECISION AND JUDGMENT ENTRY OF THE COURT OF COMMON PLEAS INCORRECTLY INTERPRETED AND APPLIED THE STATUE OF LIMITATIONS SET FORTH IN R.C. 4123.85 BY DETERMINING THAT THE INITIATING EVENT WAS THE APPELLEE'S PERMANENT TERMINATION OF HIS EMPLOYMENT WITH THE APPELLANT.
 II. THE FACT AND DETERMINATION BY THE COURT OF COMMON PLEAS ACCEPTING APPELLEE'S CONTENTION THAT HE WAS NOT AWARE OF HIS DIAGNOSIS AND ITS RELATIONSHIP TO EMPLOYMENT, IS NOT SUPPORTED BY THE EVIDENCE, ESPECIALLY WHEN CONSIDERED PURSUANT TO THE SUMMARY JUDGMENT STANDARD.
 I
In his first assignment of error, appellant maintains the trial court incorrectly interpreted and applied the statute of limitations set forth in R.C. 4123.85 when it determined the initiating event was appellee's permanent termination of his employment with appellant. New Bakery contends the appropriate initiating event was the date appellee was first disabled due to the condition, i.e. his first sick day due to the condition. For the reasons set forth below, we disagree. R.C. 4123.85 governs the statute of limitations for filing workers' compensation claims arising from an occupational disease. The statute states: In all cases of occupational disease, or death resulting from occupational disease, claims for compensation or benefits are forever barred unless, within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician or within two years after death occurs, application is made to the industrial commission or the bureau of workers' compensation or to the employer if he is a self-insuring employer. R.C. 4123.85
In White v. Mayfield (1988), 37 Ohio St.3d 11, the Supreme Court interpreted this statute, and held a disability due to an occupational disease begins on the latest of three dates: 1) when the claimant first became aware through medical diagnosis he or she was suffering from such disease; 2) when the claimant first received medical treatment for such condition; or 3) the date claimant first quit work. Id. at paragraph 1 of the syllabus. The plaintiff in White developed a hearing disability after working next to extremely loud machinery for over twenty-nine years. Even though the plaintiff began wearing a hearing aid in 1973, and was diagnosed with hearing loss due to his employment in 1978, the plaintiff continued working until the company went out of business in 1982. The plaintiff filed his application for workers' compensation benefits in 1983. The Supreme Court found the disability due to the occupational disease began on the date claimant first quit work, in this case, the date the company went out of business. Id. Since the Supreme Court's decision in White, several Ohio courts of appeals have endeavored to apply the test announced therein. In Bitticker v. Mayfield (June 23, 1988), Tuscarawas App. No. 88AP-010004, unreported, this Court found a claimant's occupational disease began on the last date of his employment, notwithstanding the fact the disease interfered with his employment prior to that time. In so finding, this Court reviewed the Supreme Court's decision in White, supra, noting "one may suffer an occupational disease that gradually appears and worsens over time, but does not ripen into a compensable disability until sometime after the symptoms of the occupational disease are manifested." Id. at 2, quoting White, supra at 13. This Court reasoned a contrary holding would only serve to penalize the claimant for attempting to continue his employment in spite of his illness. Id. at 3. In 1993, the Court of Appeals for the Twelfth Appellate District addressed a worker's compensation claim in which a firefighter contracted a breathing disorder related to his exposure to talcum while fighting fires. The Court found a claim for workers' compensation benefits for an occupational disease was not barred by the two year statute of limitations where the claimant left work for a short period of time to undergo surgery caused by the condition, because the record established the fire fighter returned to his job following surgery. Couch v. Middletown (1993), 86 Ohio App.3d 128, 133. In Ziemkiewicz v. Universal Urethane Prod., Inc. (1994), 96 Ohio App.3d 494, the Sixth District Court of Appeals construed the phrase "quit work." In Ziemkiewicz, factually similar to the matter sub judice, the claimant was a lathe operator who developed breathing problems from exposure to chemicals in the workplace. Claimant experienced these problems almost immediately after he began work, and was shortly thereafter diagnosed with an occupationally related disease. Claimant took a number of sick days due to his condition, but continued to work for another three years. In fact, claimant decided to quit only after he was hospitalized as a result of the condition, and only after his doctor advised him to leave his position. In making its decision, the Sixth District utilized the reasoning of this Court in Bitticker, supra: In determining when the statute of limitations set forth in R.C.4123.85 is triggered in cases such as this these courts have construed the phrase "quit work" as used in White as the point at which a claimant permanently terminated employment, as opposed to when a claimant took time off for treatment with a subsequent return to the employment. These courts held that where an occupational disease is diagnosed but there is only a gradual appearance of the disability and the employee continues to work and does not file a claim until finally quitting work, the two-year statue of limitations does not begin to run until the employment was permanently terminated, despite the earlier diagnosis. See, Bitticker v. Mayfield (June 23, 1988), Tuscarawas App. No. 88AP010004, unreported 1988 WL 70513; Campbell v. Mayfield (Sept. 30, 1992), Portage App. No. 91-P-2337, unreported, 1992 WL 267358; Makris v. Ormet Corp. (Aug. 26, 1998), Monroe App. No. 637, unreported, 1988 WL 91306. The Bitticker court reasoned that to hold otherwise would only serve to penalize an employee for attempting to continue working in spite of the illness.
In the matter sub judice, appellee continued his employment despite his illness. We find the statute of limitations began to run when appellee permanently terminated his employment relationship. Accordingly, appellant's first assignment of error is overruled.
 II
In its second assignment of error, appellant contends the trial court's finding appellee was not aware of his diagnosis and its direct causal relationship to employment until May of 1996, was unsupported by the record. Specifically, appellant maintains appellee's affidavit is in direct contravention to his own response to appellant's request for admission number eight, which stated he received Dr. Pickens' April 10, 1987 report. Based upon of our disposition of assignment of error one, we also overrule this assignment of error. The Supreme Court's decision in White, supra, specifically provides the statute of limitations begins to run on the later of three dates; 1) when a claimant first becomes aware through a medical diagnosis that he or she was suffering from a disease; 2) the date on which a claimant first received medical treatment for such a disease; 3) or the date a claimant first quit work on account of the disease. White v. Mayfield (1988), 37 Ohio St.3d 11. Assuming arguendo, appellant herein was notified of the direct casual relationship between his occupational disease and his employment in 1987, the statute of limitations did not begin to run until appellee first quit work on account of the disease. Accordingly, appellant's second assignment is overruled.
The January 23, 1999 Judgment Entry of the Muskingum County Court of Common Pleas is affirmed.
By: Hoffman, J. Wise, P.J. and Gwin, J. concur