HEARD, Appellant,

v.

CONRAD et al., Appellees.

[Cite as *Heard v. Conrad* (2000), 138 Ohio App.3d 503.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 98–CA–71.

Decided March 14, 2000.

*Elliott, Heller, Maas, Moro & Magill Co., L.P.A.,* and *C. Douglas Ames,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Robert J. Marek,* Assistant Attorney General, for appellees Bureau of Workers' Compensation and Industrial Commission of Ohio.

*Jerome Webbs,* for appellee Eichleay Corporation.

_____

WAITE, Judge.

This matter presents a timely appeal of summary judgment granted in favor of appellees in the Mahoning County Court of Common Pleas. The trial court concluded that appellant had failed to file his occupational disease claim within the statutory period.

It is clear from the record that this matter was ripe for summary judgment as all parties agree on the following relevant facts: George Heard, appellant, voluntarily retired from his employment with the Eichleay Corporation in October 1982. On March 31, 1993, appellant was diagnosed with and began treating for asbestosis and chronic obstructive pulmonary disease. Appellant did not file a claim for workers' compensation benefits until July 12, 1995.

Appellee Administrator of the Bureau of Workers' Compensation denied appellant's claim on August 4, 1995, finding it to be statutorily time barred. Appellant proceeded through the administrative appeals process to no avail. Ultimately, the matter was pursued to the common pleas court.

As all parties have agreed to the facts herein, cross-motions for summary judgment were filed. Based on the two-year limitations period set out in R.C. 4123.85, the court granted judgment to appellee on March 13, 1998.

Appellant presents one assignment of error to this court:

"The decision by the court of common pleas, in granting the defendant-appellee's motion for summary judgment and denying appellant's motion for summary judgment is not supported by law; it is reversible error and must be overturned."

When reviewing a trial court's decision to grant summary judgment, we review the evidence *de novo* and apply the same standard used by the trial court. *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 543, 632 N.E.2d 1341, 1342, citing *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123; *Bell v. Horton* (1996), 113 Ohio App.3d 363, 365, 680 N.E.2d 1272, 1273–1274. In addition, summary judgment under Civ.R. 56 is only proper when the movant demonstrates that "(1) No genuine issue as to any

material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds [could] come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1131–1132.

These factors make it clear that summary judgment should be granted with caution, being careful to resolve doubts in favor of the nonmoving party. *Id.*

The party seeking summary judgment has the initial burden of setting forth the motion's basis and identifying those portions of the record showing that there are no genuine issues of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. The movant must be able to point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support its claim. *Id.*

If this initial burden is met, the nonmoving party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not respond, summary judgment, if appropriate, shall be [granted.]" *Id.*

The matter before us presents perhaps the best example of a matter ready for summary judgment this court has yet seen. The facts are straightforward; the sole issue presented is whether, as a matter of law, appellant timely filed for workers' compensation benefits. Not surprisingly, the law on the matter is not so straightforward. For the reasons which follow, we must agree with the trial court herein and find that the appellant has failed to timely file his claim.

R.C. 4123.85 sets out the time limitations within which an occupational disease claim must be filed with the Bureau of Workers' Compensation. Under that statute, a claim is barred unless filed "within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician". On its face, this statute would appear to bar appellant's claim out of hand. A claimant must file within two years of disability or can have this limitation extended as long as this extension does not exceed six months after diagnosis. Appellant was diagnosed on March 31, 1993, and had until the end of September 1993 to file his claim. Since he did not file until mid-June 1995, over two years after diagnosis, appellant appears to be barred by statute.

Appellant argues, however, that this section does not apply to bar his claim because he has not been "disabled" by the disease as that term is defined by caselaw. In fact, appellant argues essentially that he will never become "dis-

abled" for purposes of this statute and cannot ever be barred from filing his occupational disease claim.

For this unique argument, appellant directs us to the holding in *White v. Mayfield* (1988), 37 Ohio St.3d 11, 523 N.E.2d 497. In *White,* the court defined the word "disability" found within the statute of limitations by adopting the Industrial Commission's definition as found in its Resolution 21. *Id.* at 13, 523 N.E.2d at 500. The *White* court held, quoting Resolution 21:

" 'It is hereby directed that since R.C. Section 4123.85 provides that an occupational disease application (other than silicosis) shall be barred unless made to the Bureau within two years after the disability began or within two years after death, and that said Section does not define the word 'disability,' the following should be used as an *instruction guide* in determining 'when disability due to the disease began':

" 'Disability due to an occupational disease shall be deemed to have begun as of the date on which the claimant first became aware through medical diagnosis that he was suffering from such disease *or* the date on which he first received medical treatment for such disease *or* the date claimant first quit work on account of such disease, *whichever date is latest.*' " (Emphasis added.) *White, supra,* at 13, 523 N.E.2d at 500.

In so doing, the court specifically found that this resolution acted as a "complement" to the statute, especially when recognizing that occupational diseases are usually of such a nature, "where definition of the 'beginning' of the 'disability due to the disease' is almost impossible to accurately define under the terms of the statute." *Id.* at 13, 523 N.E.2d at 500. In reality, the court nullified that portion of the statute of limitations which specifically required an employee to file no later than six months after diagnosis and substituted this three part guideline, instead.

As appellant voluntarily retired from his employment, he argues that he never "quit work on account of such disease." Thus, he states, he never met and will never meet the third element of the *White* test and the statutory period within which to file will never be closed as to him. In essence, appellant argues that there is an exception that must be carved out of the statute of limitations that would permit all retired persons an unlimited period within which to apply for benefits as long as they began treating and were diagnosed subsequent to retirement.

Appellee and the trial court took a different view of the *White* test. The court held specifically in its judgment entry granting summary judgment to appellees that the third element was inapplicable to appellant because he had retired.

Thus, as appellant has filed his claim beyond the latest date found in the remaining two arms of the test, he is barred from suit.

We must agree with the lower court's interpretation. While we recognize that certain diseases, like that contracted by appellant, have long latency periods and that some latitude must be given to those claimants suffering from these diseases, we also recognize that there must be *some* concern for timeliness in asserting those claims. First, the *White* court distinctly states that this three-element test is to be used as a *guideline* for defining "disability," recognizing that it may have a fluid and changing meaning based on the particular claimant, the particular disease, and its effects. While the *White* test does state that the later in time of the three elements will prevail to determine timeliness, it does not state that all three elements must, in fact, be met. The court used the word "or" not "and" in connecting these elements. We can only determine that this use of the word "or" recognized that there would be instances where one or more elements of the test would be missing or inapplicable.

Appellant raises *Liposchak v. Indus. Comm.* (1995), 73 Ohio St.3d 194, 652 N.E.2d 753, for the proposition that a "retired" worker could not be barred from filing for disability benefits. *Liposchak*, however, is a distinctly different matter than presented by the case at bar. The claimant in *Liposchak* quit work in 1986 after disciplinary proceedings were instituted against him for carrying a gun to work. The claimant then did odd jobs and cared for an elderly couple. In 1992, he was diagnosed with malignant mesothelioma. His workers' compensation claim, filed shortly after diagnosis, was allowed even though the claimant had quit work some twelve years earlier. In dispute, however, was the claimant's permanent total disability compensation allowance, which he applied for shortly after his initial occupational disease claim was approved. At issue was whether the claimant was totally unable to work because of his disability or, instead, was unwilling to work. An award of permanent total disability compensation, known as "PTD," will not be granted by the Bureau of Workers' Compensation if the claimant voluntarily removed himself from the work force prior to claiming that he was permanently and totally unable to work. *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d 138. PTD is to compensate a claimant who would ordinarily be able to work "but for" the occupational injury or disease; this award is essentially made in lieu of the monies a claimant could earn if he were not ill or injured.

*Liposchak* may be easily distinguished from the matter before us because in *Liposchak* there is no question the claimant timely filed an application for his occupational disease benefits and had these approved. While we cannot determine how soon after diagnosis or treatment the claim was filed, we do know it was filed with the time set out by statute. The *Liposchak* claimant was

attempting to go one step further. Once his underlying occupational disease claim was allowed, he next sought compensation in lieu of wages. For this, he needed to prove he was "disabled" in the sense that he could not, as opposed to would not, work.

In the present case, appellant is attempting to have his initial filing approved. He has not yet reached the ultimate step; proving permanent, total disability should he then seek compensation in addition to medical treatment and payment. An applicant could wait to file an occupational disease claim once that applicant has become disabled so that he or she must quit work, or the applicant could file when medical treatment is first received or the applicant could file when first diagnosed with the disease. Whichever option the applicant chooses, he or she may choose the option latest in time for that applicant but, in any event, must not file longer than two years after the date of that triggering event. A PTD applicant as in *Liposchak* must have an approved occupational disease or injury claim and must then go on to prove that he or she cannot work due to that injury or illness.

Appellant next turns our attention to the unreported matter of *DesMarais v. Strauss & Troy* (1997), 121 Ohio App.3d 125, 699 N.E.2d 113. In *DesMarais*, the applicant complained of pain in her arms and wrists, and sought treatment in 1990. In 1992, she was diagnosed with bilateral accumulative trauma syndrome but continued to work. In a firm-wide downsizing, the applicant was laid off in 1994 and shortly thereafter filed her occupational disease claim. The trial court found that the claim was barred by the statute of limitations, but the court of appeals reversed, specifically relying on the three-part test found in *White v. Mayfield, supra.* The trial court held that since the applicant was treated in 1990 and diagnosed in 1991, the time limits had run on two of the three parts of the test. The trial court then held that, due to the applicant's layoff, the third prong was inapplicable, finding the applicant did not quit work because of the disease: she quit because of layoff. The court of appeals, in reversing, held that "[t]he requirement that the claimant 'quit work' on account of his or her disease means that the claimant is no longer able to work because of the disease; it does not mean that the claimant must quit the exact employment that caused the disease." 121 Ohio App.3d at 130, 699 N.E.2d at 117.

We can also easily distinguish *DesMarais* from the matter before us for the very reason the court of appeals reversed the matter. In *DesMarais*, the trial court had also made a determination that, at the time of filing her occupational disease claim, the applicant *was* "totally disabled due to an occupational disease attributable to her work with appellee." 121 Ohio App.3d at 131, 699 N.E.2d at 117. The applicant filed within days of this determination of total disability. In his reliance on this case, appellant overlooks this crucial fact.

Appellant himself admits that he "has never been disabled from employment because of his pulmonary disease, as diagnosed by Dr. Politis, in that [he] had never quit work on account of his pulmonary disease." Appellant's brief, at 7. Using appellant's own logic, then, his claim for occupational disease will *never* accrue, because before claiming an occupational disease a claimant must have a "disability." Clearly, this reading was also never intended by the legislature.

We have before us a claimant who, essentially, slept on his rights. He seeks to have this court declare that all retirees who are diagnosed with and treated for an alleged occupational disease are forever exempt from any statute of limitations and may file their occupational disease claims at any time the retiree so chooses. We decline to so rule. It is not necessary to meet all three elements of the *White* test before filing an occupational disease claim. A claimant may opt to file within two years of treatment or within two years of diagnosis or within two years after the claimant was forced out of his job due to the affects of his occupational disease, whichever is later. The third *White* element is, of necessity, inapplicable to a retiree who is diagnosed and treats after his or her voluntary retirement. In so doing, we still recognize the long latency of most occupational diseases and the insidious nature of their onset. Our ruling does not foreclose an ill retiree from filing for his or her rightful benefits. That retiree must simply file within two years of treatment or two years of diagnosis, whichever is later.

For all of the foregoing, the decision of the trial court to grant summary judgment to appellees is affirmed.

*Judgment affirmed.*

VUKOVICH, J., concurs.

Cox, P.J., dissents.

Cox, Presiding Judge, dissenting.

I must respectfully dissent from the decision reached by the majority.

I am persuaded by the decision rendered by the First District Court of Appeals in *DesMarais v. Strauss & Troy* (1997), 121 Ohio App.3d 125, 699 N.E.2d 113, wherein the lower court's determination that the third element of the *White* definition was inapplicable to the claimant was reversed. As such, I would reverse the trial court's decision granting summary judgment in favor of appellees.