DOMBELEK, Appellant,

v.

OHIO BUREAU OF WORKERS' COMPENSATION et al., Appellees.

Tate, Appellant,

v.

Ohio Bureau of Workers' Compensation et al., Appellees.

[Cite as *Dombelek v. Ohio Bur. of Workers' Comp.*,
154 Ohio App.3d 338, 2003-Ohio-5151.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

Nos. 02 CA 39 and 02 CA 116.

Decided Sept. 23, 2003.

340

Kelley & Ferraro, LLP, Thomas M. Wilson, Pamela A. Armor and Lori A. Luka, for appellants.

Jim Petro, Attorney General, and Mary Ann O. Rini, Assistant Attorney General, for appellees.

WAITE, Presiding Judge.

{¶ 1} These two timely appeals have been consolidated for the purposes of appellate review as they present similar facts and issues. Appellants John Dombelek ("Dombelek") and Les Tate ("Tate") each filed claims for workers' compensation benefits. They are now appealing from two judgment entries of the Mahoning County Court of Common Pleas granting summary judgment in favor of the Administrator of the Ohio Bureau of Workers' Compensation ("Administrator"). The issue on appeal is whether there are material facts in dispute concerning the application of the statute of limitations contained in R.C. 4123.85, which requires a claimant to file a workers' compensation claim "within two years after the disability due to the disease began[.]" We conclude from the record that there are material facts in dispute in both cases, requiring us to reverse the two trial court judgment entries and remand these matters for hearing.

{¶ 2} Both Dombelek and Tate worked for manufacturing firms in Ohio. Dombelek began working for GF Corporation ("GF") in 1946 and worked there until his retirement in 1977 or 1978. Tate worked for Wean Incorporated ("Wean") from 1967 through 1973. He also worked for Wean during a two-week period in 1976. Both men were exposed to asbestos during the course of their employment.

{¶ 3} Each of the two men received chest x-rays in May 1997. On May 19, 1997, Dombelek received a report signed by Dr. Neal C. Chadwick, stating that the x-ray showed "significant history of exposure to asbestos dust * * * consistent with asbestosis." On September 16, 1997, Tate received a similar letter signed by Dr. Paul C. Venizelos.

{¶ 4} Sometime later another doctor, Dr. Alvin Schonfeld, examined the medical history of each of the men. He concluded that both men had asbestosis, "within a reasonable degree of medical certainty." Dombelek's diagnosis from Dr. Schonfeld was dated September 9, 1999, and Tate's was dated January 12, 2000.

{¶ 5} On September 22, 1999, Dombelek filed an application for workers' compensation benefits. Tate filed his application on December 27, 1999. The Industrial Commission denied both applications. Each man timely appealed from the Industrial Commission's decision to the Mahoning County Court of Common Pleas. In each case, the Administrator moved for summary judgment, claiming that each man's application was not filed within the time permitted by R.C. 4123.85. On February 4, 2002, the trial court granted the Administrator's motion with respect to Dombelek. On May 20, 2002, the trial court granted the Administrator's motion with respect to Tate. Both Tate and Dombelek filed timely appeals from the respective judgment entries.

{¶ 6} Although briefed separately, both Dombelek and Tate assert the same assignment of error on appeal. Dombelek's assignment of error states:

{¶ 7} "The trial court erred by granting summary judgment on behalf of defendants-appellees on the basis that plaintiff-appellant's underlying workers' compensation claim was untimely filed outside of the limitation period set forth in R.C. 4123.85."

{¶ 8} Tate's assignment of error states:

{¶ 9} "The trial court erred by granting summary judgment on behalf of defendant-appellee on the basis that plaintiff-appellant's underlying workers' compensation claim was untimely filed outside of the limitation period set forth in R.C. 4123.85."

{¶ 10} An appellate court reviews de novo the decision to grant a motion for summary judgment, using the same standards as the trial court, as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against

whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which that party bears the burden of proof at trial. Id. at 293, 662 N.E.2d 264.

{¶ 11} The Administrator attempted to support his motion for summary judgment by reference to copies of class-action complaints filed in Cuyahoga County on July 9, 1998, and July 27, 1998. The complaints were for personal injury and loss of consortium due to asbestos exposure, and both Tate and Dombelek were listed as plaintiffs. Both Tate and Dombelek argue on appeal that the Cuyahoga County complaints were not properly submitted as evidence in support of summary judgment. Because of the nature of summary judgment, we will resolve this evidentiary matter before dealing with the broader question of whether summary judgment was appropriately granted by the trial court.

{¶ 12} When ruling on a motion for summary judgment, the trial court may only review evidence properly submitted in accordance with Civ.R. 56(C). *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.* (1995), 72 Ohio St.3d 94, 97, 647 N.E.2d 788. Civ.R. 56(C) prescribes the specific types of evidence to be considered in support of a motion for summary judgment, namely, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact" that are timely filed in the action.

{¶ 13} The Administrator argues that the trial court could take judicial notice of the Cuyahoga County complaints even if they did not qualify as evidence under Civ.R. 56(C). The Administrator further argues that the Rules of Civil Procedure no longer require that a complaint be verified, that appellants were not prejudiced by the timing of the filing of the complaints, and that Dombelek waived any error with respect to the filing of the complaints.

{¶ 14} Turning first to the Administrator's waiver argument, the record reveals that Dombelek objected to the use of the Cuyahoga County complaints at the time the trial court announced its decision. Before beginning the second day of voir dire, the trial court announced that it was granting summary judgment to the Administrator after, among other things, "taking into consideration the lawsuit that was filed in 1998." Immediately after the trial court announced its decision, Dombelek objected on the record to the court's decision. Although he

later asked the trial court to clarify that the ruling was based in part upon the Cuyahoga County complaints, Dombelek's prior objection is sufficient to preserve his argument for appeal.

{¶ 15} The Administrator argues that the Cuyahoga County complaints were admissible, since Civ.R. 56(C) provides that pleadings are admissible to support a motion for summary judgment. Appellee cites *State ex rel. Spencer v. E. Liverpool Planning Comm.* (1997), 80 Ohio St.3d 297, 685 N.E.2d 1251, as its authority for this proposition. But *Spencer* held that sworn pleadings filed in the same case are evidence under Civ.R. 56(C), not that any pleading filed in any case is evidence under that rule.

{¶ 16} We are aware that the Eighth District Court of Appeals was recently faced with this identical issue in *Davis v. Taylor & Bogus Foundry,* 8th Dist. No. 81324, 2003-Ohio-1832, 2003 WL 1849172, and that the Eighth District's reasoning and conclusions were much like the Administrator's current argument. The plaintiff in *Davis* was a member of the same Cuyahoga County class action suit along with appellants. The *Davis* court concluded that the Cuyahoga County complaint was admissible without being verified and without being incorporated by reference into an affidavit. Id. at ¶ 21. *Davis* basically concluded that it is permissible to file a pleading from any civil action in support of a motion for summary judgment. *Davis* based this conclusion on *Spencer,* supra.

{¶ 17} We cannot agree with the conclusion of the Eighth District Court of Appeals in *Davis.* According to Civ.R. 56(C), not all pleadings are treated alike in the context of summary judgment. Although Civ.R. 56(C) allows for pleadings to be used in support of summary judgment, the reference in the rule is to "pleadings * * * timely filed in the action." In other words, only the complaint, answer, counterclaims, etc., submitted as pleadings in the immediate case are automatically part of the evidence that can be used in support of summary judgment.

{¶ 18} In contrast to *Spencer,* supra, we rely on *State ex rel. Freeman v. Morris* (1991), 62 Ohio St.3d 107, 579 N.E.2d 702, in which the Supreme Court specifically held:

{¶ 19} "Civ.R. 56(C) enumerates 'pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact.' The complaints and judgment entries [of other cases], submitted without affidavit, are none of these." Id. at 109, 579 N.E.2d 702.

{¶ 20} The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a

properly framed affidavit pursuant to Civ.R. 56(E). See *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 467, 20 O.O.3d 388, 423 N.E.2d 105.

{¶ 21} Therefore, based on *State ex rel. Freeman,* the Administrator needed to file a proper affidavit that referred to the Cuyahoga County complaints, as well as to attach sworn or certified copies of the complaints to the affidavit, in conformity with Civ.R. 56(E).

{¶ 22} We must note that even if the Administrator had taken the proper steps to submit the Cuyahoga County complaints, the Administrator is mistaken about the evidentiary value of the Cuyahoga County complaints. The Ohio Supreme Court has indicated that the allegations in a complaint are treated as binding judicial admissions only in the case arising from that complaint. *Gerrick v. Gorsuch* (1961), 172 Ohio St. 417, 17 O.O.2d 353, 178 N.E.2d 40, paragraph two of the syllabus; *Faxon Hills Constr. Co. v. United Bhd. of Carpenters & Joiners of Am.* (1958), 168 Ohio St. 8, 10, 5 O.O.2d 260, 151 N.E.2d 12. A judicial admission presented "by pleading and setting forth the fact * * * is binding as between parties to the suit, and in the same suit in which such admission is made." *Peckham Iron Co. v. Harper* (1884), 41 Ohio St. 100, 106, 1884 WL 75. In other words, the allegations in a complaint are binding admissions only in the lawsuit initiated by that complaint, similar to other written admissions obtained through Civ.R. 36: "Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding."

{¶ 23} Although we have found no other Ohio appellate opinions on the issue, the vast majority of states that have considered this issue have allowed pleadings to be used as evidence in an unrelated proceeding, but not as binding or conclusive evidence on any matter. Annotation, *Admissibility of Pleading as Evidence Against Pleader, on Behalf of Stranger to Proceedings in which Pleading was Filed* (1959), 63 A.L.R.2d 412, 1958 WL 11287. The allegations and assumptions in a pleading from an unrelated case may be rebutted in many ways, such as by showing that it was filed without the plaintiff's knowledge, assistance, or direct input; was withdrawn or modified; was not intended to be a judicial admission but was merely raised as a fact in dispute to be proved at trial; or that later facts reveal that an assertion made in the complaint was in error. Id.; 4 Wigmore, Evidence (3d Ed.1940), Sections 1065–1067. Federal courts take the same view, allowing pleadings from unrelated cases to be introduced as rebuttable evidence and not as conclusive admissions. See, e.g., *Enquip, Inc. v. Smith–McDonald Corp.* (C.A.7, 1981), 655 F.2d 115, 118.

{¶ 24} Based on these legal principles, a trial court should not automatically grant summary judgment simply based on factual allegations or assumptions contained in a pleading filed in an unrelated case. Although the assertions in an unrelated complaint may have very persuasive value, they may be rebutted.

{¶ 25} Furthermore, the Cuyahoga County complaints were filed less than two years before the appellants filed their claims with the Industrial Commission. The complaints by themselves do not prove that appellants violated the two-year statute of limitations of R.C. 4123.85. The Cuyahoga County complaints appear to reflect that appellants thought that they were disabled by asbestosis on July 9 and July 27, 1998, respectively. Appellee would need further corroborative evidence to show that appellants believed they were disabled as early as September 1997 (for Dombelek) and December 1997 (for Tate), which would be two years prior to the dates on which they filed their initial claims with BWC.

{¶ 26} The Administrator argues that its failure to incorporate the Cuyahoga County complaints into an affidavit by reference is harmless, since the trial court could take judicial notice of the complaints. But this court has adhered to the principle that a trial court may not take judicial notice of earlier proceedings, either in its own court or another court, except for proceedings in the immediate case under consideration. *Calex Corp. v. United Steelworkers of Am.* (2000), 137 Ohio App.3d 74, 85, 738 N.E.2d 51. "The rationale for this holding is that, if a trial court takes judicial notice of a prior proceeding, the appellate court cannot review whether the trial court correctly interpreted the prior case because the record of the prior case is not before the appellate court." *D & B Immobilization Corp. v. Dues* (1997), 122 Ohio App.3d 50, 53, 701 N.E.2d 32. Under this rationale, a trial court may not take judicial notice even of its own judgment entries in another case. See id. at 52–53, 701 N.E.2d 32; *Phillips v. Rayburn* (1996), 113 Ohio App.3d 374, 378–379, 680 N.E.2d 1279. Accordingly, the trial courts in the instant appeals could not take judicial notice of the Cuyahoga County complaints when ruling on the Administrator's motions for summary judgment.

{¶ 27} Due to the fact that the Cuyahoga County complaints are not the type of evidentiary materials specifically listed in Civ.R. 56(C), were not incorporated by reference into an affidavit in either case, and because the lower courts were not entitled to take judicial notice of the complaints, we cannot consider the Cuyahoga County complaints as evidence in support of the Administrator's motions for summary judgment.

{¶ 28} We now turn to the broader issue of whether summary judgment is appropriate in the two cases under review. Both cases before us involve the interpretation of R.C. 4123.85, which states:

{¶ 29} "In all cases of occupational disease, or death resulting from occupational disease, *claims for compensation or benefits are forever barred unless, within two years after the disability due to the disease began,* or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician or within two years after death occurs, *application is made to the industrial commission or the bureau of workers' compensation or to the employer if he is a self-insuring employer.*" (Emphasis added.)

{¶ 30} The Ohio Supreme Court established a three-part test to use in interpreting when a disability due to disease has begun:

{¶ 31} " 'It is hereby directed that since R.C. Section 4123.85 provides that an occupational disease application (other than silicosis) shall be barred unless made to the Bureau within two years after the disability began or within two years after death, and that said Section does not define the word "disability," the *following should be used as an instruction guide* in determining "when disability due to the disease began":

{¶ 32} " '*Disability due to an occupational disease shall be deemed to have begun as of the date on which the claimant first became aware through medical diagnosis that he was suffering from such disease or the date on which he first received medical treatment for such disease or the date claimant first quit work on account of such disease, whichever date is the latest.*' " (Emphasis added.) *White v. Mayfield* (1988), 37 Ohio St.3d 11, 13, 523 N.E.2d 497, quoting the 1945 Resolution 21 of the Industrial Commission.

{¶ 33} The Administrator argues that Tate and Dombelek were diagnosed with asbestosis in May and September 1997, when they received letters indicating that their chest x-rays were consistent with asbestosis. The Administrator further asserts that the two men began receiving treatment for asbestosis in May 1997, when their chest x-rays were taken. The Administrator concludes that the applications were not filed within the time frame set by R.C. 4123.85, and, thus, summary judgment was appropriate.

{¶ 34} Appellants contend that they were neither diagnosed with nor treated for asbestosis until Dr. Schonfeld issued his reports in September 1999 and January 2000, indicating that each man was diagnosed with asbestosis, "within a reasonable degree of medical certainty." Appellants conclude that their applications for workers' compensation benefits were filed within the applicable statute of limitations, based on the holding of *White,* supra, and that both of the trial courts erred when granting summary judgment to the Administrator.

{¶ 35} The *White* three-part test cited above was meant to be an instructional guide in determining when a disability due to occupational disease has begun. Id., 37 Ohio St.3d at 13, 523 N.E.2d 497. Although *White* describes three

separate elements for determining the beginning date of a disability (diagnosis, treatment, or leaving employment), the opinion does not rigidly define those concepts. This court has previously held:

{¶ 36} "The *White* court distinctly states that this three-element test is to be used as a guideline for defining 'disability,' recognizing that it may have a fluid and changing meaning based on the particular claimant, the particular disease, and its effects." *Heard v. Conrad* (2000), 138 Ohio App.3d 503, 507, 741 N.E.2d 897.

{¶ 37} Appellants believe that the terms "diagnosis" and "treatment" have very specific meanings, and that the May 1997 x-rays referred-to by the Administrator could not possibly qualify as "diagnosis" or "treatment."

{¶ 38} Appellants also argue that a doctor's interpretation of a chest x-ray cannot be a diagnosis in and of itself. Dombelek argues that a diagnosis must include the following elements: a physical examination; an inquiry of occupational and exposure histories; an interpretation of pulmonary function test results to determine lung impairment; and an opinion statement of causation, to a reasonable degree of medical certainty, by a physician. Tate also has specific requirements in his definition of diagnosis. He contends that a diagnosis must meet the standards set in Industrial Commission Resolution R96–1–01, which include (1) an interpretation of roentgenography by a "B" reader certified by the National Institute of Occupational Safety and Health; (2) the results of a pulmonary function study; and (3) an opinion of causation by a licensed physician.

{¶ 39} Appellants' attempt to narrowly define the words "diagnosis" and "treatment" is ill advised. The reason that the words "diagnosis" and "treatment" are even relevant to R.C. 4123.85 is because the Supreme Court, in *White*, used those words to explain the meaning of the word "disability" in the statute and to define when a disability due to an occupational disease begins. The definition that the Supreme Court adopted in *White* was in turn taken from a definition created by the Industrial Commission, cited in *White* as Resolution 21.

{¶ 40} The definitions proposed by the appellants would further complicate the task of the trial court in determining whether R.C. 4123.85 applies to a particular workers' compensation claimant. We have noticed that Tate and Dombelek do not agree even on how specific the definition of "diagnosis" should be. Subsequent claimants might want more specifications added to the definitions of "diagnosis" and "treatment," depending on the facts of their cases. We do not believe that this is an acceptable approach. These terms can be described or defined only in a manner that is best described as "fact-based." The trier of fact is in the best position to evaluate when medical diagnosis and treatment have occurred based on all the facts and circumstances of the individual case.

{¶ 41} Furthermore, according to *White*, it is not enough that a claimant be diagnosed with a disease; the claimant must also be aware he has the disease because of the diagnosis. The Administrator itself argues that the "knew or should have known" standard set by the Ohio Supreme Court decision in *Lewis v. Trimble* (1997), 79 Ohio St.3d 231, 680 N.E.2d 1207, applies to these cases now under review. Although *Lewis* was interpreting a different statute of limitations than the one involved before us, its analysis appears to apply to our review.

{¶ 42} *Lewis* was interpreting the statute of limitations for bodily injury claims (as opposed to occupational disease claims) governed by R.C. 4123.84. The *Lewis* court explained that a literal interpretation of R.C. 4123.84 would mean that the statute is triggered merely by the occurrence of an injury, without taking into account whether the claimant had discovered the true nature of the injury. Id. at 238, 680 N.E.2d 1207. The Supreme Court found it fundamentally unfair that a claimant could be barred from relief even though he or she was unaware of the true nature of the medical condition. Id.

{¶ 43} *Lewis* applied a "knew or should have known" standard to R.C. 4123.84 in order to alleviate the harsh affects of a literal interpretation of the statute. *Lewis* held:

{¶ 44} " 'The time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness, and probable compensable character of his or her injury or disease.' [2B Larson, Workmen's Compensation Law (1996) 15–206, Section 78.41(a).]

{¶ 45} "Since this standard is essentially one of due diligence, the focus properly rests upon the reasonableness of claimant's conduct under all the surrounding circumstances. This requires that all relevant factors bearing on the question of reasonableness be considered, including, but not limited to, the information available to claimant, his or her experience, education and intellectual functioning, and what he or she has been told or not told about the nature, seriousness, and probable compensable character of the condition.

{¶ 46} "In this context, it becomes clear that whether or not claimant is informed of a specific diagnosis is not itself a determinative inquiry, but constitutes one factor to be considered. Thus, under a particular set of circumstances it may be properly found that the statute begins to run when the claimant is informed of a specific diagnosis." Id. at 239, 680 N.E.2d 1207.

{¶ 47} The *Lewis* analysis is applicable to cases involving R.C. 4123.85 as well. One of the factors triggering the statute of limitations in R.C. 4123.85, according to *White*, is "the date on which the claimant *first became aware* through medical diagnosis that he was suffering from such disease * * *." (Emphasis added.) *White*, supra, 37 Ohio St.3d at 13, 523 N.E.2d 497. The

words "first became aware" as used in *White* parallel the phrase "knew or should have known" as used in *Lewis*. The intent of the holding in *Lewis* was to allow a claimant to prove that a diagnosis, in and of itself, does not necessarily trigger the statute of limitations in R.C. 4123.84. There is no logical reason why a claimant should not be able to make the same argument to overcome the statute of limitations in R.C. 4123.85.

{¶ 48} We are aware that the record contains depositions showing that both appellants answered affirmatively when asked whether they were diagnosed with asbestosis after their chest x-rays in 1997. Nevertheless, both men stated in their initial claim applications to the BWC that the date of each of their injuries was November 10, 1998. Based on the record as it exists here, it is up to the factfinder to weigh the evidence in this case to determine whether appellants were aware that they had been diagnosed with asbestosis after they received the results of their chest x-rays.

{¶ 49} We now turn to the parties' dispute regarding what constitutes treatment for the purposes of *White* and R.C. 4123.85. The Administrator argues that "treatment," in the context of R.C. 4123.85, means "all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." *Bradley v. Connor* (Nov. 8, 1984), 8th Dist. No. 48005, 1984 WL 3557; and *Biddle v. Gen. Dynamics Land Sys.* (Dec. 12, 1991), 3d Dist. No. 1–91–22, 1991 WL 261827; *Davis,* supra, 8th Dist. No. 81324, at ¶ 26. This definition is the same definition of "treatment" found in Black's Law Dictionary. Thus, according to the Administrator, appellants received their first "treatment" when they had their chest x-rays taken because an examination is part of the definition of "treatment."

{¶ 50} Appellants believe that they have not yet been treated for asbestosis and that a chest x-ray cannot be considered treatment. Tate also argues that there is no actual treatment for asbestosis because it is an incurable disease. Tate appears to concede that Dr. Schonfeld's personal examination on January 12, 2000, was the functional equivalent of treatment, because Dr. Schonfeld provided at least some instructions for preventive health care relating to asbestosis. Tate argues that he filed his initial claim within two years of January 12, 2000, and therefore satisfied the time requirements of R.C. 4123.85.

{¶ 51} Appellants' assumption that chest x-rays or other initial diagnostic tests can never qualify as "treatment" under the *White* test is incorrect. There is nothing in the *White* decision that requires "diagnosis" and "treatment" to be mutually exclusive concepts. We would expect that in many cases a diagnosis would be the first step in the treatment process.

{¶ 52} That does not mean that there is no distinction between "treatment" and "diagnosis." In some instances, a claimant may have symptoms of a disease prior to any diagnosis of the disease, and the claimant may seek relief for those symptoms prior to diagnosis. In those instances, the date that treatment begins might be much earlier than the date on which the claimant is first diagnosed with an occupational disease. It is also possible that an isolated x-ray or test may be so tenuously related to a particular disease that it should not be considered as the beginning of treatment. Thus, the distinction between "diagnosis" and "treatment," as used in the *White* case, has meaning even if, in a particular case, the beginning of a claimant's diagnosis also constitutes the beginning of his treatment. Once again, these questions are best left to the trier of fact to resolve after weighing the evidence in light of the totality of the circumstances.

{¶ 53} Based on the above, summary judgment was not appropriate in either case now under review. Both cases contain genuine conflicts of material facts regarding the starting date of treatment and the date that appellants were first aware through medical diagnosis that they were suffering from asbestosis. We reverse both judgment entries granting summary judgment to the Administrator, and remand both cases to the trial court for further proceedings.

Judgments reversed
and cause remanded.

VUKOVICH, J., concurs.

DEGENARO, J., concurs in judgment only.

DEGENARO, Judge, concurring in judgment only.

{¶ 54} I concur in the majority's opinion through ¶ 27 and its ultimate conclusion. But I cannot agree with the rationale it uses when reaching that conclusion.

{¶ 55} The majority states that the three-part test to be used in order to determine when a disability due to an occupational disease begins for the purposes of the statute of limitations found in R.C. 4123.85 is an instructional guide and that it is ill-advised for this court to define what the terms used in that test mean, finding that the determination of when a disability due to an occupational disease begins is solely within the purview of the fact-finder. Accordingly, the majority feels that the trial court erred when it granted summary judgment to the Administrator, since there were genuine issues of material fact regarding whether the appellants in these cases filed their claims within the applicable statute of limitations.

{¶ 56} I cannot agree with the majority's rationale for two main reasons. First, Ohio Supreme Court syllabus law is not an instructional guide, even if the administrative regulation it was taken from was, and the words the court uses have a definite meaning which can be ascertained and should be applied. Second, I disagree with how the majority interprets R.C. 4123.85 and the subsequent case law. But since I believe that the plain, ordinary meaning of the words in that case law, when construed in the light most favorable to the claimant (as required by statute), mandates that this court reverse the trial court's decision and remand this case for further proceedings, I agree with the majority's judgment in this case.

{¶ 57} Before explaining my disagreement with the majority's decision, I must point out that this court's decision disagrees with the Eighth District's recent decision in *Davis v. Taylor & Bogus Foundry*, 8th Dist. No. 81324, 2003-Ohio—1832, in more ways than one. As the majority points out, we disagree with *Davis* concerning the admissibility of the Cuyahoga County complaints. Opinion at ¶ 16–17. But the majority fails to note that the *Davis* court was faced with the same statute of limitations issues regarding the application of the three-part test used to determine when a disability due to an occupational disease begins. Given facts similar to those in this case, that court came to the opposite conclusion and affirmed the trial court's decision to grant summary judgment to the Administrator. To be explicit, this court not only rejects *Davis's* decision regarding the admissibility of evidence on summary judgment, but also rejects its application of the three-part test.

{¶ 58} As the majority states, the applicable statute of limitations in this case is R.C. 4123.85, which provides:

{¶ 59} "In all cases of occupational disease, or death resulting from occupational disease, claims for compensation or benefits are forever barred unless, within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician or within two years after death occurs, application is made to the industrial commission or the bureau of workers' compensation or to the employer if he is a self-insuring employer."

{¶ 60} In 1945, the Industrial Commission adopted Resolution 21 in an attempt to define when a disability due to an occupation disease began. It concluded that " '[d]isability due to an occupational disease shall be deemed to have begun as of the date on which the claimant first became aware through medical diagnosis that he was suffering from such disease or the date on which he first received medical treatment for such disease or the date claimant first quit work on account of such disease, whichever date is the latest.' " *White v. Mayfield* (1988), 37 Ohio St.3d 11, 13, 523 N.E.2d 497. But the Industrial Commission noted that the test it set

forth should be used only as an instructional guide. Id. Of course, this is all it could be until a court adopted it, which no court did until 1982. See *Craddock v. Eagle Picher Indus., Inc.* (1982), 8 Ohio App.3d 383, 8 OBR 498, 457 N.E.2d 338. In *White,* the Ohio Supreme Court adopted Resolution 21 as syllabus law, noting that it is almost impossible to tell when an occupational disease begins under the terms of the statute.

{¶ 61} Under the *White* test, "the triggering event of R.C. 4123.85 is the *disability* brought on by the occupational disease, not the diagnosis of the disease itself." (Emphasis sic.) *White* at 12, 523 N.E.2d 497. As this court has previously stated, "It is not necessary to meet all three elements of the *White* test before filing an occupational disease claim. A claimant may opt to file within two years of treatment or within two years of diagnosis or within two years after the claimant was forced out of his job due to the affects of his occupational disease, whichever is later." *Heard v. Conrad* (2000), 138 Ohio App.3d 503, 509, 741 N.E.2d 897.

{¶ 62} The majority emphasizes that *White* intended for its test to be only an instructional guide and the fluid nature of that test. See Opinion at ¶ 31, 35–36. This explains how the majority incorrectly applies that test. This ignores what the *White* court said when adopting that test in two ways. First, the court's syllabus mentioned nothing about the instructional nature of the test. Instead, it stated that for purposes of R.C. 4123.85, this is when a disability due to an occupational disease begins. At the time of the *White* decision, S.Ct.R.Rep.Op. 1(B) provided that the syllabus, not the text, of a Supreme Court opinion states the controlling points of law. Even the current version of S.Ct.R.Rep.Op. 1(B) provides that the syllabus controls any disharmony between it and the text or footnotes of an opinion. The court's single mention of the instructional nature of the test occurred when it quoted Resolution 21, not when the court was stating its holding.

{¶ 63} Second, the court stated that it intended for this three-part test to settle an unsettled area of law. It noted that it is almost impossible to tell when an occupational disease begins under the terms of the statute and the need for a firm, predictable standard to determine whether a person's claim has been timely filed. *White* at 13–14, 523 N.E.2d 497. It believed that this test "will supply firmness and predictability in this area of the law" because it removes "much of the 'gray area' in the statute." Id. at 14, 523 N.E.2d 497. While the fact that the court intended for the test to be a firm and predictable standard to decide this issue does not diminish the adaptable nature of the test, it does prevent it from being merely an instructional guide without any firm meaning. Since the court intended for its test to be firm and predictable, then the words used in that test must have meaning.

{¶ 64} In the cases currently before this court, the appellants each quit their employment well before the two-year statute of limitations. So they must have been diagnosed or first treated for asbestosis within two years before they filed their claim to fall within the statute of limitations. The parties dispute both the date of the diagnosis of the appellants' occupational disease and the date the appellants first received medical treatment for that disease. Thus, we must determine what constitutes diagnosis and treatment of an occupational disease for the purposes of R.C. 4123.85.

{¶ 65} The majority shies away from giving the term "diagnosis" and "treatment" any firm meaning, stating that such an attempt is "ill advised," since the only reason these terms are relevant is because the Ohio Supreme Court used them in *White.* Opinion at ¶ 39. While this is true, the fact that the court used these terms in attempt to provide firmness and predictability to a gray area is significant. And while it may be ill advised to define these terms in the manner advocated by the parties, these terms do have a plain, ordinary meaning which can be applied in this case. Applying the plain, ordinary meaning of these terms does not affect the adaptability of the test since the words in the test must have some meaning. When doing so, a court must keep in mind the statutory mandate that workers' compensation legislation "shall be liberally construed in favor of employees and the dependents of deceased employees." R.C. 4123.95; *White* at 14, 523 N.E.2d 497.

{¶ 66} The majority states that a person is diagnosed with an occupational disease when that person knew or should have known of that diagnosis. It then states that there is a genuine issue of material fact as to when the appellants were diagnosed, since the Administrator introduced evidence that both men answered affirmatively in their depositions that they were diagnosed with asbestosis in September 1997 after their chest x-rays, but their claim states that the date of their injuries were in November 1998. This conclusion is wrong for three reasons.

{¶ 67} First, the majority's conclusion ignores the basic standard a court must use when ruling on a motion for summary judgment. It has long been established that summary judgment is proper only when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude that no genuine issue as to any material fact remains to be litigated and that the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. But it is just as important to remember that "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996),

75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and *cannot rest on mere allegations or denials in the pleadings.* Id. at 293, 662 N.E.2d 264.

{¶ 68} In this case, the majority is saying that a genuine issue of material fact exists regarding when the appellants were diagnosed because the evidence the Administrator presented conflicts with the claims the appellants made in their applications for benefits. The majority does not point to any specific facts that the appellants introduced that support their argument that the initial diagnosis was made at a later date. This analysis allows the appellants to rest on mere allegations in the pleadings in response to the Administrator's arguments. Accordingly, it is incorrect pursuant to *Dresher.*

{¶ 69} Second, the majority incorrectly interprets the Ohio Supreme Court's decision in *White* when it stated that *White* adopted the equivalent of a "knew or should have known" standard when determining when a person became aware that they were suffering from an occupational disease. It claims that the phrase "first became aware" parallels "knew or should have known" and, therefore, that the statute of limitations in R.C. 4123.85 is triggered when a claimant knew or should have known through medical diagnosis that he or she was suffering from an occupational disease. When doing this the majority compares this case to *Lewis v. Trimble* (1997), 79 Ohio St.3d 231, 680 N.E.2d 1207. But the situation the court faced in *Lewis* is fundamentally different from the one this court faces, and the decision in *Lewis* demonstrates why it does not apply here.

{¶ 70} As the majority recognizes, *Lewis* dealt with the statute of limitations found in R.C. 4123.84, dealing with bodily injury claims, rather than R.C. 4123.85, dealing with occupational disease claims. The issue in *Lewis* was when someone can file a claim for an injury not immediately apparent when that person suffers a bodily injury in the workplace. For instance, if a person suffers from depression as a result of a workplace accident but the depression does not manifest itself until years later, could the person still make a claim for workers' compensation benefits?

{¶ 71} R.C. 4123.84 provides that all claims for injuries resulting from a bodily injury suffered in the workplace must be filed within two years of the bodily injury. The Ohio Supreme Court found that applying this statute literally would be unduly harsh. Id. at 239, 680 N.E.2d 1207. It found that a literal application of the statute often would exact the impossible of a claimant, demanding more of him or her than can reasonably be expected of a prudent person in asserting his or her rights. Id. Accordingly, it made a judicial concession and stated that the statute of limitations would begin to run when the claimant knew or should have known of the nature and seriousness of the residual condition and its causal relation to his industrial injury. Id. at paragraph one of the syllabus.

{¶ 72} The issue in this case is different from that in *Lewis*. In *Lewis*, a literal application of the statute would be unduly harsh, since it would force the claimant to make a claim before that claimant was aware of the claim. In contrast, the majority in this case does not even attempt to show how the *White* test is in the least bit harsh. It provides that a claimant can file his claim either after he is first diagnosed, treated, or quits work for an occupational disease. It is difficult to imagine how anyone can call this a harsh standard. The rationale for applying the "knew or should have known" standard in *Lewis* is simply not present in this case.

{¶ 73} Furthermore, the language the *White* test uses does not in any way indicate that a "knew or should have known" standard applies. The majority states that the phrase "first became aware through medical diagnosis" parallels the phrase "knew or should have known." But this conclusion is incorrect and, in fact, conflicts with the reasoning in *Lewis*. *White's* plain words demonstrate that it parallels "knew" but not "should have known." A claimant does not "first become aware" when he "should have known" he was diagnosed with an occupational disease, since it is possible that a claimant "should have known" he suffered from an occupational disease if he knows enough about its nature to realize that it is both serious and work-connected. Id. at 240, 680 N.E.2d 1207, quoting 2B Larson, Workmen's Compensation Law (1996) 15–271, Section 78.41(d). The majority reads words into *White's* syllabus law that simply are not there, and the words they are reading into it serve no real purpose.

{¶ 74} Rather than reading words into the *White* test, I would apply it as pronounced by the Ohio Supreme Court. It stated that the statute of limitations may be triggered when someone first becomes aware through medical diagnosis that they are suffering from an occupational disease. A diagnosis is "[t]he determination of a medical condition (such as a disease) by physical examination or by study of its symptoms." Black's Law Dictionary (7th Ed.1999) 464; see, also, Stedman's Medical Dictionary (26th Ed.1995) 474; Merriam–Webster's Collegiate Dictionary (10th Ed.1998) 319. In order to determine whether a doctor has made a diagnosis, the focus must be on the substance of the words communicated to the patient. The certainty with which the doctor diagnoses the disease is immaterial, as *White* does not require that the doctor diagnose the disease with any particular amount of medical certainty. Likewise, it does not matter whether the doctor communicates the determination directly or through a third person, as long as the communication takes place. Simply stated, a person has become aware that he or she is suffering from a disease through medical diagnosis when, after a doctor conducts a physical examination or a study of the person's symptoms, the doctor communicates a determination to that person that he or she is suffering from a disease.

{¶ 75} Applying this definition of diagnosis to this case, we turn to the Administrator's argument that the appellants were diagnosed with asbestosis in May 1997. According to the Administrator, each man testified that he was told of his asbestosis after receiving his chest x-ray. In a sense, the Administrator is correct. At their depositions, both men answered affirmatively when asked whether they were diagnosed with asbestosis after their chest x-rays. But it is significant that neither man testified that a doctor told them that diagnosis or that the doctor communicated that diagnosis to them through a third person. Although those x-rays were reviewed by a doctor at a later date, neither man testified that the "diagnosis" immediately after the x-rays were taken resulted from a doctor's review of the chest x-rays. Without evidence that the determination was made by a doctor, we must presume for the purposes of summary judgment that it was not and, therefore, conclude that neither man was diagnosed with asbestosis in May 1997.[1]

{¶ 76} In the alternative, the Administrator argues that each man was diagnosed with asbestosis in September 1997 when he received his report from the doctors who reviewed the May 1997 chest x-rays. After reading the results of the x-ray, each doctor wrote as follows: "With a significant history of exposure to asbestos dust, these findings would be consistent with asbestosis."

{¶ 77} Saying that certain findings *are consistent with* asbestosis is not a determination that a patient actually *has* asbestosis. Dr. Schonfeld explained this distinction in his deposition testimony. When describing how a doctor cannot definitively tell from a chest x-ray whether a patient is suffering from asbestosis, Dr. Schonfeld testified that the only thing a doctor can tell from a chest x-ray is that there are abnormalities consistent with asbestosis. But he also cited rheumatoid arthritis as one example of a disease which would appear to be the same as asbestosis on a chest x-ray. Dr. Schonfeld further explained that when the doctor says that findings are consistent with a disease, he is "saying that there are in fact changes which might be due to an occupational lung disease" and is not ruling out other causes. In other words, when a doctor states that findings are consistent with a disease, he is saying that the patient could be suffering from that disease, from another disease, or no disease at all. It follows that further study would need to be conducted either by examining the patient's history or conducting further testing before the doctor can make a diagnosis that the patient is actually suffering from the disease. Thus, a statement that findings are consistent with a disease is not a diagnosis of that disease as a matter of law. Accordingly, neither man was diagnosed with asbestosis in September 1997.

---

1. Likewise, the record does not contain a diagnosis after the test performed on Tate in November 1997 because it contains no conclusion the doctor made based on the results of that test.

{¶ 78} Conversely, the appellants argue that the reports they received from Dr. Schonfeld constituted a diagnosis of asbestos. In those reports, Dr. Schonfeld lists the manner in which he examined the appellants and concluded that for each man "the diagnosis of asbestosis is established within a reasonable degree of medical certainty." Although the certainty Dr. Schonfeld professes is not required by *White* or R.C. 4123.85, he made a determination that each man was suffering from a disease after conducting a physical examination of the men and studying their symptoms. This constitutes a diagnosis. Thus, given the record before us, we conclude that, when viewing all facts in the light most favorable to the appellants, the day they first were diagnosed with their occupational disease was the day Dr. Schonfeld issued his report.

{¶ 79} I now turn to what constitutes treatment for the purposes of *White* and R.C. 4123.85. The majority concludes that a chest x-ray could qualify as treatment under *White,* but that such a determination would be best left to the trier of fact. I disagree with this conclusion because I do not believe that under the facts of this case any reasonable factfinder could conclude that a chest x-ray was treatment of asbestosis. The majority states that *White* does not require that "diagnosis" and "treatment" be mutually exclusive concepts. But it then goes on to distinguish between the concepts. This is because these terms mean two different things. While a diagnosis of a disease is a determination that the patient has that disease, treatment is the "[m]edical or surgical management of a patient." Stedman's Medical Dictionary (26th Ed.1995) 1843; see, also, Merriam–Webster's Collegiate Dictionary (10th Ed.1998) 1258 (defining "treat" and "treatment" as caring for medically and surgically). It is important to realize that treating a disease does not necessarily lead to curing a disease. But steps taken to cure a disease are "treatment" of a disease. Further, steps taken to alleviate symptoms without curing the disease or affecting the underlying case of the symptoms also qualify as treatment. Id. (defining "palliative treatment" and "symptomatic treatment").

{¶ 80} Because "diagnosis" and "treatment" mean two different things, they can occur at two different times. Someone could be treated for a condition even before it was specifically diagnosed. For instance, a person who has smoked for years could complain to his doctor of chest pain or shortness of breath and the doctor could tell him to quit smoking before the doctor could diagnose what was causing the problems. In such a case, the doctor arguably started to manage the disease even before the disease was diagnosed. But it is also highly possible that in some situations the patient receives no advice from the doctor on how to manage his disease until after the doctor has diagnosed the disease. In such a case, treatment could first occur on either the same date or after the patient is diagnosed with the disease.

{¶ 81} This, of course, rejects the Eighth District's conclusion in *Davis*. It defined "treatment" as "all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." Id. at ¶ 26. But this broad definition of "treatment" would render one, of the three tests in *White* meaningless. If we were to adopt *Davis's* definition of treatment, then all steps taken toward receiving a diagnosis would count as treatment for the purposes of R.C. 4123.85 and the date the claimant was first treated would always come before the date he was first diagnosed. Surely, the Ohio Supreme Court cannot have intended for one of the *White* tests to be meaningless.

{¶ 82} For each appellant, the record reveals that he first received treatment for his asbestosis when he received his report from Dr. Schonfeld. That report gave specific recommendations to each man on how they could take steps to manage their disease. For example, Dr. Schonfeld informed both men that they should have certain tests performed yearly and refrain from the use of tobacco products. In contrast, each man testified that he was given no medical advice after his chest x-rays and the reports he received from the first doctors gave no suggestions or recommendations as to what he should do to manage his disease. Likewise, there is no indication that the x-rays "managed" the disease in any way. Thus, given the record before us, I must conclude that, when viewing all facts in the light most favorable to the appellants, the day they first received treatment for their occupational disease was the day Dr. Schonfeld issued his report.

{¶ 83} The record currently before this court, when viewed in the light most favorable to the appellants, demonstrates that they were both diagnosed and treated for asbestosis when they received their reports from Dr. Schonfeld. For each appellant, this was within two years of when they filed their claim for workers' compensation benefits. Accordingly, the trial courts erred when they granted summary judgment to the Administrator in each of these cases. However, as I disagree with the majority's rationale, I concur in judgment only.