[Cite as *Divincenzo v. Divincenzo*, 2022-Ohio-4457.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| PAULA L. DIVINCENZO, | **CASE NO. 2022-L-014** |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| STEVE J. DIVINCENZO, | |
| Defendant-Appellant. | Trial Court No. 2014 DR 000510 |

**O P I N I O N**

Decided: December 12, 2022
Judgment: Reversed; remanded

*Sandra A. Dray*, Sandra A. Dray Co., LPA, 1111 Mentor Avenue, Painesville, OH 44077 (For Plaintiff-Appellee).

*Hans C. Kuenzi*, Hans C. Kuenzi Co., LPA, The Offices at Pinecrest, 100 Park Avenue, Suite 210, Orange Village, OH 44122 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Steve J. DiVincenzo ("Father"), appeals the judgment of the trial court that (1) imported factual findings from a separate DVCPO proceeding and utilized those facts to grant the motion of appellee, Paula L. DiVincenzo ("Mother"), terminating the parties' shared parenting and designating Mother the residential parent and legal custodian of the parties' child and (2) dismissed Father's motions for custody and to show cause on the basis that Father's motions were premature because the ex parte DVCPO issued in the separate action greatly restricted his parenting time. For the reasons that follow, we hold that although a trial court may take judicial notice of its judgment entries

issued in separate cases, it may not take judicial notice of the facts underlying those judgments. Further, we conclude that a DVCPO's parenting provisions terminate when the trial court subsequently issues parenting orders in the parties' divorce case. Therefore, the existence of the DVCPO does not render as premature a custody modification motion filed in a divorce action. Accordingly, we reverse and remand for further proceedings consistent with this decision.

{¶2} The parties divorced in 2016. They share one son, P.D., born in 2014. The divorce decree adopted the parties' shared parenting plan. In December 2017, the court issued an agreed judgment entry making certain modifications to the shared parenting plan. Thereafter, the paternal grandmother ("Grandmother") moved to intervene and requested visitation with the child. The trial court granted the motion to intervene and appointed a new guardian ad litem.

{¶3} In June 2019, the trial court issued an entry adopting Mother and Grandmother's agreement regarding visitation. On July 2, 2020, Father filed a motion requesting the court to order Mother to show cause as to why she should not be held in contempt for allegedly violating portions of the shared parenting decree. On July 10, 2020, Mother filed a motion to terminate shared parenting and to designate her as the sole legal custodian and residential parent of the child. On August 12, 2020, Father filed a motion to designate him as the sole residential parent and legal custodian of the child. Following a pretrial on all pending motions, the court issued a judgment entry on January 31, 2022, stating that a full hearing had been held in a companion case involving a domestic violence civil protection order (DVCPO). The entry stated that the court had

2

issued a DVCPO effective until July 26, 2026. The January 31, 2022 entry issued in the present case then provides in pertinent part:

> After a review of the full hearing Civil Protection Order decision as well as the Plaintiff's July 10, 2020 Motion to Terminate Shared Parenting, the Court finds the evidence presented in 2020 in Case No. 19 DV 000038 would again be reheard by the Court in a trial on the Plaintiff's Motion to Terminate Shared Parenting herein. This would duplicate what has already been heard by the Court and cause the parties significant additional attorney fees. In the 19 DV 000038 full hearing, the Court found the Respondent's reckless conduct caused the bodily injury of burns to 25% of the child's body and issued a restrictive supervised parenting time order for the respondent.
>
> Accordingly, the Court finds the Plaintiff's July 10, 2020 Motion to Terminate Shared Parenting is hereby granted and further incorporates herein the Domestic Violence full hearing decision filed July 26, 2021 in Lake County Case No. 19 DV 000038 the same as if fully rewritten. The Court hereby orders the Plaintiff as the sole residential parent of PD and sole decision maker for PD. The Court further orders the Defendant is to have supervised parenting time only for two hours per week at his cost. The Court orders the supervisors cannot be family or friends of either parent. The supervisors are to have an LISW license at a minimum.

{¶4} The court further determined that Father's motions were filed prematurely because the ex parte DVCPO in effect at the time Father filed his motions greatly restricted his parenting time. Therefore, the court dismissed Father's motions. The court attached an unsigned "Exhibit A" to the January 31, 2022 decision, which contains the findings from the full hearing conducted in the DVCPO case.

{¶5} On February 14, 2022, this court reversed the DVCPO that the trial court stated it was incorporating in the present judgment and remanded the DVCPO matter for further proceedings. *DiVincenzo v. DiVincenzo*, 11th Dist. Lake No. 2021-L-093, 2022-Ohio-434, ¶ 21. On February 25, 2022, Father filed the transcripts of the full hearing

3

conducted in the DVCPO case in the instant case. Father now appeals the trial court's judgment entry granting Mother's motion to terminate shared parenting.

{¶6} In Father's first and second assigned errors, he argues:

{¶7} "[1.] The trial court erred in taking judicial notice of its findings in Case No. 19 DV 000038 to adjudicate motions pending in Case No. 14 DR 000510."

{¶8} "[2.] The trial court erred in failing to conduct [a] hearing upon the parties' motions regarding custody of the minor-child."

{¶9} In his first and second assigned errors, Father maintains that the trial court improperly took notice of the separate DVCPO proceeding and erred in deciding the parties' post-decree motions filed in the divorce action without a hearing.

{¶10} Evid.R. 201 governs "judicial notice of adjudicative facts, i.e. the facts of the case." Evid.R. 201(A). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). Pursuant to Evid.R. 201(C), "[a] court may take judicial notice, whether requested or not" of adjudicative facts. Additionally, "[j]udicial notice may be taken at any stage of the proceeding." Evid.R. 201(F).

{¶11} Here, the trial court specifically utilized the factual findings made in the DVCPO case as well as the existence of the ex parte and full hearing DVCPO in rendering its decision in the separate post-divorce case.

{¶12} Father maintains that the trial court was not permitted to take judicial notice of the DVCPO proceedings. However, Mother cites this court's decision in *Dowhan v.*

4

*Dowhan* ("*Dowhan II*"), 11th. Dist. Lake No. 2012-L-065, 2013-Ohio-4097, in support of the trial court's reliance on the DVCPO decision. In Father's reply brief, he maintains that *Dowhan II* is both distinguishable from the instant case and is an outlier that fails to apply settled law.

{¶13} In *Dowhan II*, this court phrased the issue as "whether a court may adjudicate a motion to modify visitation based on the outcome of a related proceeding to establish a civil protection order." *Dowhan II* at ¶ 1. In that case, the parties' divorce decree provided that the father have no parenting time with the parties' children. *Id.* at ¶ 2. Thereafter, the mother alleged that the father had sent her a threatening letter, and, as a result, she petitioned the court for a DVCPO. *Id.* at ¶ 4, citing *Dowhan v. Dowhan* ("*Dowhan I*"), 11th Dist. Lake No. 2012-L-037, 2012-Ohio-5830. In the separate DVCPO case, the court granted the mother a five-year DVCPO, requiring the defendant "to maintain a distance of 1,000 feet from her and the children[.]" *Dowhan II* at ¶ 6, citing *Dowhan I* at ¶ 5-6. Thereafter, the father filed (1) a motion to modify custody and establish visitation in the divorce case and (2) a motion to modify the protection order in the DVCPO case to remove the children as protected persons. *Dowhan II* at ¶ 7-8, citing *Dowhan I* at ¶ 6. The trial court denied the motion to modify the DVCPO, which this court affirmed. *Dowhan II* at ¶ 9, citing *Dowhan I*. The trial court thereafter denied the motion to modify custody and establish visitation in the post-decree divorce case, noting that, in the "'companion case * * * [a] day of trial was held on [the motion to modify the protective order] before the undersigned Judge,' in which '[t]he undersigned Judge found Mother and the children were in fear of imminent physical harm from Father.'" *Dowhan II* at ¶ 11.

5

The father appealed, arguing that the trial court erred in summarily denying his motion in the post-decree divorce case by relying on the DVCPO hearing. *Id.* at ¶ 13.

{¶14} This court concluded that "[t]he fact that [the father] cannot come within 1,000 feet of the children renders a hearing on his Motion to Modify Custody unnecessary. We need not notice the underlying factual basis for the protection order, since it is the fact of the protection order and its terms which preclude the possibility of [the father] exercising visitation with his children." *Id.* at ¶ 19. Therefore, we held that "[t]he failure to hold a hearing on the Motion to Modify did not deprive [the father] of the opportunity to be heard, as [the father] had fully exercised that right in the proceeding to modify the protection order and the appeal thereof. Modification of the protection order is a necessary pre[re]quisite to the establishment of parenting time with the children." *Id.*

{¶15} The author judge in the present case dissented in *Dowhan II*, opining that because the trial judge had essentially denied the father's motion "to modify custody and establish visitation on its review of testimony and evidence which had been presented in a separate action * * *[, it had] relied on improper evidence in making its ruling because that evidence was not part of the record in the underlying matter involving custody and visitation." *Dowhan II* at ¶ 26 (Wright, J. dissenting), citing *Yannitell v. Oaks*, 4th Dist. Washington No. 07CA63, 2008-Ohio-6271, ¶ 31.

{¶16} However, "'It is axiomatic that a trial court may take judicial notice of its own docket'—including the docket in a separate case." *Pollard v. Elber*, 2018-Ohio-4538, 123 N.E.3d 359, ¶ 4 (6th Dist.), quoting *Indus. Risk Insurers v. Lorenz Equip. Co.*, 69 Ohio St.3d 576, 580, 635 N.E.2d 14 (1994). In *Pollard*, the Sixth District addressed whether the trial court could properly take judicial notice of the parties' divorce litigation in a

6

separate civil case. The Sixth District held that "[t]he trial court cannot take judicial notice of a docket 'for the truth of the matters asserted in the other litigation,' * * * but only 'to establish the fact of such litigation.'" *Pollard* at ¶ 15, quoting *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, 877 N.E.2d 968, ¶ 20, quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992), and *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991). The Sixth District further held that "courts cannot take judicial notice of prior proceedings, unless the prior proceedings happened earlier *in the same case*, even if the court, judge, parties, facts, and issues are identical to those in the separate case." (Emphasis added.) *Pollard* at ¶ 17, citing *McMahon v. Continental Express, Inc.*, 6th Dist. Wood No. WD-07-030, 2008-Ohio-76, ¶ 34 and *Dombelek v. Ohio Bur. of Workers' Comp.*, 154 Ohio App.3d 338, 2003-Ohio-5151, 797 N.E.2d 144, ¶ 26 (7th Dist.). Although the principles that (1) a court may take judicial notice of its docket in separate case, and (2) a court is precluded from taking notice of prior "proceedings" in a separate case, appear contradictory, the *Pollard* Court's application of these principles is instructive:

> Here, the trial court improperly took judicial notice of information from the divorce litigation. Although the civil litigation involves the same parties and Pollard's claims arise from the child support orders issued in the divorce litigation, this is a separate action. Because this is a separate action, the trial court was only permitted to take notice of the docket from the divorce litigation, and then only to the extent that the court used the docket "to establish the fact of" the divorce litigation. *Coles* at ¶ 20; *Indus. Risk* at 580, 635 N.E.2d 14; *McMahon* at ¶ 34. Instead, the trial court relied on information contained in the docket sheet to prove "the truth of the matters asserted in the other litigation." *Coles* at ¶ 20. For example, the trial court used the docket to establish the amount of Othmar's child support obligation, when the obligation was modified, that Othmar had amassed arrearages, and that Pollard did not attempt to collect unpaid child support from

7

> Othmar after January 1975. None of this information is the type that can be established by judicial notice of a case docket.

*Pollard* at ¶ 16

{¶17} The Supreme Court of Ohio's decision in *Coles*, on which *Pollard* partly relied, involved "an original action for a writ of mandamus to compel a park district's board of commissioners to commence appropriation proceedings for property allegedly seized and occupied by the district." *Coles* at ¶ 1. In a separate declaratory judgment action, "the *Key Trust* litigation," the common pleas court determined the parties' interests in the property. *Id.* at ¶ 12. This decision was affirmed in *Erie Metroparks Bd. of Commrs. v. Key Trust Co. of Ohio*, 6th Dist. Erie Nos. E-02-009 and E-02-011, 2002-Ohio-4827, ¶ 22. *Coles* at ¶ 13. Thereafter, the Coleses maintained that the board of park commissioners built a recreational trail over part of their property that was beyond that found to be covered by the railroad lease in the *Key Trust* litigation. *Id.* at ¶ 16. The Supreme Court took judicial notice of the *Key Trust* litigation, including the declaratory judgment of the trial court that had been upheld on appeal. *Id.* at ¶ 20. In doing so, the Supreme Court stated:

> On the same date that their evidence was due, the parties filed motions for the court to take judicial notice of certain filings in the *Key Trust* litigation, including the common pleas court and court of appeals judgments, which are attached to their motions. Because the parties agree that the submitted documents should be part of the court's record in this original action, we grant the motions. *Cf. Stutzka v. McCarville* (C.A.8, 2005), 420 F.3d 757, 761, fn. 2 (court takes judicial notice of judicial opinions and public records on motion to enlarge record on appeal); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.* (C.A.2, 1992), 969 F.2d 1384, 1388, quoting *Kramer v. Time Warner, Inc.* (C.A.2, 1991), 937 F.2d 767, 774 ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the

8

other litigation, but rather to establish the fact of such litigation and related filings'").

*Id.*

{¶18} Based upon *Pollard* and *Coles*, it follows that a court may take judicial notice of the existence of a judgment entry issued in a separate case, but it may not take judicial notice of facts underlying the entry. *But see Dombelek*, 2003-Ohio-5151, at ¶ 26, citing *D & B Immobilization Corp. v. Dues*, 122 Ohio App.3d 50, 701 N.E.2d 32, 33 (8th Dist.1997) ("a trial court may not take judicial notice even of its own judgment entries in another case"); *Phillips v. Rayburn*, 113 Ohio App.3d 374, 680 N.E.2d 1279, 1282 (4th Dist.1996) ("the trial court lacked the authority to take judicial notice of its own records in another case"). This distinction is supported by Evid.R. 201(B), in that the existence of a judgment entry in separate case before the trial court is "not subject to reasonable dispute in that it is * * * capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Moreover, this court can discern no reason why a prior judgment of a court cannot be noticed by the court that issued it. *See* 1 Jones on Evidence, Section 2:100, Related Proceedings (7th ed.) ("As a general rule, there is no abuse of discretion where a court takes judicial notice of court filings from prior litigation between the same parties. Such court filings are matters of public record, *the existence of which* may be judicially noticed as such in subsequent litigation between the same parties.") (Emphasis added.).

{¶19} However, the factual findings made by the court are subject to reasonable dispute in that accuracy of a court's findings may be reasonably questioned. *See* 1 Jones on Evidence, Section 2:104.50, Judicial Notice of Factual Finding in Another Case (7th

Case No. 2022-L-014

ed.) ("Several courts have held, correctly, that a court cannot take adjudicative judicial notice of the factual finding in another case.").

{¶20} Although the trial court in *Dowhan II* did rely on the facts underlying the DVCPO issued in the separate proceeding, the *Dowhan II* majority constrained judicial notice to "the fact of the CPO" and "its terms." *Dowhan II*, 2012-Ohio-5830, at ¶ 19. To this extent, we reaffirm that *Dowhan II* correctly took judicial notice of the existence of the DVCPO.

{¶21} Accordingly, insofar as the trial court here took judicial notice of the existence of the DVCPO, it was permitted to do so. Neither party disputes that the DVCPO was in effect at the time the trial court took notice of it, as the judgment on appeal here was issued prior to our reversal in *DiVincenzo*, 2022-Ohio-434. However, to the extent that the trial court took judicial notice of the factual findings made in the DVCPO proceedings, it erred.

{¶22} Having made this distinction, we now turn to the effect of the existence of the DVCPO on the post-decree motions filed in the divorce case.

{¶23} R.C. 3113.31(E)(1)(d) permits a court to issue temporary parenting orders within a DVCPO:

> With respect to a petition involving family or household members, [a DVCPO may] *temporarily* allocate parental rights and responsibilities for the care of, or establish *temporary* parenting time rights with regard to, minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or parenting time rights[.]

(Emphasis added.)

Case No. 2022-L-014

{¶24} However, such temporary parenting orders set forth in a DVCPO terminate when the court issues parenting orders in the divorce action pursuant to R.C. 3113.31(E)(3)(b), which provides:

> With respect to an order involving family or household members, subject to the limitation on the duration of an order or agreement set forth in division (E)(3)(a)[1] of this section, any order under division (E)(1)(d) of this section shall terminate on the date that a court in an action for divorce, dissolution of marriage, or legal separation brought by the petitioner or respondent issues an order allocating parental rights and responsibilities for the care of children or on the date that a juvenile court in an action brought by the petitioner or respondent issues an order awarding legal custody of minor children. * * *

{¶25} Accordingly, after the issuance of a DVCPO, when the domestic court issues a parenting order in the parties' divorce action, the order entered in the divorce action supersedes the DVCPO's parenting provisions. Applying R.C. 3113.31(E)(3)(b) to the present case, the terms of the DVCPO that affect Father's parenting time terminate on the date that the trial court adjudicates the parties' competing post-divorce decree custody motions in the divorce "action." *See* R.C. 3113.31(E)(3)(b); s*ee also* Civ.R. 75(J) ("the continuing jurisdiction of the court shall be invoked by motion filed in the original action"). Therefore, the motions filed in the divorce action cannot be adjudicated on the basis of the existence of the DVCPO alone, and it was error for the trial court to dismiss Father's custody motion as "prematurely" filed.

{¶26} We recognize that this conclusion is inconsistent with this court's holding in *Dowhan II*, which, as discussed above, held that modification of the protection order was

---

1. R.C. 3113.31(E)(3)(a) provides, in relevant part, that "[a]ny protection order issued * * * under this section shall be valid until a date certain, but not later than five years from the date of its issuance[.]"

11

Case No. 2022-L-014

a necessary prerequisite to the establishment of parenting time with the children. *Dowhan II*, 2013-Ohio-4097, at ¶ 19.

{¶27} *Dowhan II* reached this conclusion by holding that the termination provision of R.C. 3113.31(E)(3)(b) does not apply to post-decree custody modification orders filed in the divorce action, and instead, "the statutes and case law contemplate the situation where a protection order is issued pending the final allocation of parental rights and responsibilities in a divorce or dissolution proceeding." *Dowhan II* at ¶ 15. In context, the "final allocation of parental rights and responsibilities" *Dowhan II* referenced is the parties' divorce decree. *See Dowhan* at ¶ 15 ("parental rights and responsibilities were determined in the April 2009 Judgment Entry of Divorce, almost two years before [the mother] applied for a protection order").

{¶28} However, the language of R.C. 3113.31(E)(3)(b) does not specify that the order in the divorce action be set forth in the divorce decree in order to supersede and terminate the conflicting terms in a DVCPO. Instead, the dispositive language from R.C. 3113.31(E)(3)(b) provides that "any order under division (E)(1)(d) of this section shall terminate on the date that a court *in an action* for divorce * * * brought by the petitioner or respondent issues *an order* allocating parental rights and responsibilities for the care of children * * *." (Emphasis added.) Thus, this termination provision applies to an "order" issued in an "action" for divorce, and post-divorce custody modifications are issued in the divorce "action." Therefore, pursuant to the statute's plain language, post-divorce custody orders entered in the divorce action automatically terminate conflicting provisions of the DVCPO. To the extent that *Dowhan II* held otherwise, it is overruled.

12

Case No. 2022-L-014

**{¶29}** Further, with respect to Father's motion to show cause, he averred in his accompanying affidavit that Mother had violated the shared parenting plan by withdrawing the child from private school education, denying Father access to the child's records, and failing to consult with him regarding educational and medical decisions regarding the child. We cannot discern how the existence of the ex parte DVCPO, which limited Father's parenting time rights, rendered his motion to show cause filing premature. Thus, we conclude that the trial court erred in dismissing Father's motion to show cause solely on the basis of the ex parte DVCPO.

**{¶30}** Accordingly, although we do not question the trial court's assessment that testimony will likely be duplicated in this action, the trial court was not permitted to take judicial notice of the underlying factual findings from the DVCPO case, and the existence of the DVCPO itself is not dispositive of the motions. Based upon the foregoing, Father's first and second assigned errors have merit to the extent that the trial court erred in taking judicial notice of the factual findings contained in the DVCPO and deciding the pending motions on the basis of the DVCPO proceedings.

**{¶31}** In his remaining assigned errors, Father argues:

**{¶32}** "The trial court erred in barring the testimony of the guardian ad litem at full hearing in Case No. 19 DV 000038."

**{¶33}** "The trial court erred in imposing supervised parenting time between defendant-appellant and the minor child."

**{¶34}** "The trial court erred in limiting supervised. parenting time between defendant-appellant and the minor child to two hours each week."

13

Case No. 2022-L-014

{¶35} "The trial court erred in subjecting any expansion of supervised parenting time between defendant-appellant and the minor child to the mutual agreement of the parties."

{¶36} Our disposition of Father's first and second assigned errors renders his remaining assigned errors moot, and we decline to address them.

{¶37} The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this decision.

MATT LYNCH, J., concurs,

CYNTHIA WESTCOTT RICE, J., concurs in judgment only.